JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Bruce D. Kunsman, et al. | Sally L. Conkright, et al. |

| (b) County of Residence of First Listed Plaintiff   Monroe<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant   N/A<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
|---|---|
| (c) Attorney's (Firm Name, Address, and Telephone Number)<br>Robert H. Jaffe & Associates, P.A., 8 Mountain Avenue, Springfield,<br>New Jersey 07081 (973) 467-2246 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government<br>Plaintiff | ☒ 3  Federal Question<br>(U.S. Government Not a Party) |
| ☐ 2  U.S. Government<br>Defendant | ☐ 4  Diversity<br>(Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>&Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>Student Loans<br>(Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>Liability<br>☐ 320 Assault, Libel &<br>Slander<br>☐ 330 Federal Employers'<br>Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>Product Liability<br>☐ 360 Other Personal<br>Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury -<br>Med. Malpractice<br>☐ 365 Personal Injury -<br>Product Liability<br>☐ 368 Asbestos Personal<br>Injury Product<br>Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>Property Damage<br>☐ 385 Property Damage<br>Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure<br>of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational<br>Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>Exchange<br>☐ 875 Customer Challenge<br>12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| | | | **LABOR** | **SOCIAL SECURITY** | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities -<br>Employment<br>☐ 446 Amer. w/Disabilities -<br>Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate<br>Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards<br>Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting<br>& Disclosure Act<br>☐ 740 Railway Labor Act<br>☒ 791 Empl. Ret. Inc.<br>Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus -<br>Alien Detainee<br>☐ 465 Other Immigration<br>Actions | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>or Defendant)<br>☐ 871 IRS—Third Party<br>26 USC 7609 | ☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information<br>Act<br>☐ 900Appeal of Fee Determination<br>Under Equal Access<br>to Justice<br>☐ 950 Constitutionality of<br>State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original<br>Proceeding | ☐ 2 Removed from<br>State Court | ☐ 3 Remanded from<br>Appellate Court | ☐ 4 Reinstated or<br>Reopened | ☐ 5 Transferred from<br>another district<br>(specify) | ☐ 6 Multidistrict<br>Litigation | ☐ 7 Appeal to District<br>Judge from<br>Magistrate<br>Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. § 1132(a)(1)(B); 29 U.S.C. § 1132 (a)(2); 29 U.S.C. § 1132(a)(3); and 29 U.S.C § 1022 (b)
Brief description of cause:
See attachment

| VII. REQUESTED IN<br>COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION<br>UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:  ☒ Yes  ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S)<br>IF ANY | (See instructions):   JUDGE   Larimer | DOCKET NUMBER   00 CV 6311 |
|---|---|---|

| DATE<br>02/20/2008 | SIGNATURE OF ATTORNEY OF RECORD<br>/s/ Mark B. Watson |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

## ATTACHMENT TO CIVIL COVER SHEET FORM JS 44

Declaratory judgment action by individual plaintiffs who constitute a category/class of Xerox employees who were or are adversely affected by the so-called phantom account offset and who seek relief in the form of recalculation of retirement benefits under the Xerox RIGP Plan and other damages from persons or entities who participated in a conspiracy to defraud.

**Robert H. Jaffe, Esq. (RJ9773)**
**Mark B. Watson, Esq. (MW0439)**
**ROBERT H. JAFFE & ASSOCIATES, P.A.**
**8 Mountain Avenue**
**Springfield, New Jersey 07081**
**(973) 467-2246**
**Attorneys for Plaintiffs**

=======================================

| | |
|---|---|
| BRUCE D. KUNSMAN, STEPHEN T. DUNN, : | UNITED STATES DISTRICT COURT |
| CONCETTA LUPPINO, KEVIN D. CASS, : | WESTERN DISTRICT OF NEW YORK |
| ANN ADAMS, ROBERT D. BAYLEY, DONNA E.: | |
| BECKLES, MARSHA BENETTI, DALE : | |
| BRANDON, ENRIQUE J. BROUWER, CORALYN : | |
| BURNS, RICHARD O. CARVILLE, JR., : | CIVIL ACTION NO. |
| CHARLES J. CHODAK, THOMAS B. COLE, : | |
| RICHARD J. CUTRI, SCOTT A. DAVIS : | |
| FRANKLIN DELL, NICHOLAS J. DESARIO, : | |
| ROBERT G. DIDAS, LANNY L. DIEKMAN, : | |
| DAVID M. DONAHUE, MONICA DUTCHER, : | |
| GEORGE J. EDWARDS, SANDRA M. FULLER, : | |
| NANCY E. GARRETT, TIMOTHY H. : | |
| GILBERT, NEAL A. GORLA, EDWARD C. : | |
| HANZLIK, GORDON E. HEROD, ROBERT R. : | |
| HUNT, JESSE M. HUTCHINSON, LANE E. : | |
| JENKINS, KENNETH R. KAISEN, VALERIE : | |
| KLICH, NOEL T. KOHN, BRUCE KOSSUTH, : | |
| ERIC C. KULLBERG, FAITH P. KUNES, : | |
| JOHN D. LIGHT, PATRICIA M. LIPPOLD, : | VERIFIED COMPLAINT |
| VICTORIA N. LORENZETTI, ROBERT E. : | |
| LUTZ, ELLEN M. MACLEOD, ADHO MAGEE, : | |
| MARY MARLAR, PAUL JOHN MARSHALL, : | |
| JACQUELINE MASTRELLA, KATHERINE J. : | |
| MCCARTHY, KATHY MCDANIEL, JOSEPH F. : | |
| MCNEIL, JR., ROBERT C. MEYERS, DORIS : | |
| MILAZO, ELDEN MORRISON, FRANK R. : | |
| MOSEY, KATHLEEN S. MUDD, GERALD D. : | |
| NORWOOD, LOUIS N. NOST, SUSAN A. : | |
| O'KELLY , ARNOLD C. PALMER, : | |
| DONALD R. PHILIPS III, ROBERT J. : | |
| PICHTEL SR., THOMAS W. PIKE, : | |
| ROBERT J. POLHEMUS, PATRICIA ANN : | |
| RAKE, ERNEST REYES, WILLIAM D. : | |
| ROBINSON, IRWIN M. RUBIEN, : | |
| KATHLEEN P. SANTELLI, DENNIS STALY, : | |
| BONNIE STRAMER, ARTHUR C. STREB, : | |
| MARY ELLEN SULLIVAN, PEGGY SWAIN, : | |
| JAMES A. SYKES, JAMES J. TANNEY, : | |
| BARBARA M. TAYLOR, JOHN S. TENNENT, : | |
| THOMAS J. TRIESKEY, ANNE M. TROCANO, : | |
| JOSEPH A. TUMMINELLI, RONALD T. : | (CAPTION CONTINUED ON NEXT PAGE) |
| TURK, TIMOTHY D. TURNER, PETER D. : | |

```
VENTRESS, EARL WAHL, JOHN W.        :
WHIPPLE, and JOHN M. WYSOCKY,       :
                                    :
              Plaintiffs,           :
                                    :
vs.                                 :
                                    :
SALLY L. CONKRIGHT, PATRICIA M.     :
NAZEMETZ AND LAWRENCE M. BECKER, IN :
THEIR CAPACITY AS XEROX CORPORATION :
RETIREMENT INCOME GUARANTEE PLAN    :
ADMINISTRATORS AND AS INDIVIDUALS,  :
XEROX CORPORATION RETIREMENT INCOME :
GUARANTEE PLAN, XEROX CORPORATION,  :
and HEWITT  ASSOCIATES,             :
                                    :
              Defendants. :
                                    :
====================================
```

Plaintiffs Bruce D. Kunsman, Stephen T. Dunn, Concetta Luppino, Kevin D. Cass, Ann Adams, Robert D. Bayley, Donna E. Beckles, Marsha Benetti, Dale Brandon, Enrique J. Brouwer, Coralyn Burns, Richard O. Carville, Jr., Charles J. Chodak, Thomas B. Cole, Richard J. Cutri, Scott A. Davis,  Franklin Dell, Nicholas J. DeSario, Robert G. Didas, Lanny L. Diekman, David M. Donahue, Monica Dutcher, George J. Edwards, Sandra M. Fuller, Nancy E. Garrett, Timothy H. Gilbert, Neal A. Gorla, Edward C. Hanzlik, Gordon E. Herod, Robert R. Hunt, Jesse M. Hutchinson, Lane E. Jenkins, Kenneth R. Kaisen, Valerie Klich, Noel T. Kohn, Bruce Kossuth, Eric C. Kullberg, Faith P. Kunes, John D. Light, Patricia M. Lippold, Victoria N. Lorenzetti, Robert E. Lutz, Ellen M. MacLeod, Adho Magee, Mary Marlar, Paul John Marshall, Jacqueline Mastrella, Katherine J. McCarthy, Kathy McDaniel, Joseph F. McNeil Jr., Robert C. Meyers, Doris Milazo, Elden Morrison, Frank R.

Mosey, Kathleen S. Mudd, Gerald D. Norwood, Louis N. Nost, Susan A. O'Kelly, Arnold C. Palmer, Donald R. Philips III, Robert J. Pichtel Sr., Thomas W. Pike, Robert J. Polhemus, Patricia Ann Rake, Ernest Reyes, William D. Robinson, Irwin M. Rubien, Kathleen P. Santelli, Dennis Staly, Bonnie Stramer, Arthur C. Streb, Mary Ellen Sullivan, Peggy Swain, James A. Sykes, James J. Tanney, Barbara M. Taylor, John S. Tennent, Thomas J. Trieskey, Anne M. Trocano, Joseph A. Tumminelli, Ronald T. Turk, Timothy D. Turner, Peter D. Ventress, Earl Wahl, John W. Whipple, and John M. Wysocky, hereinafter sometimes collectively referred to as "the similarly situated plaintiffs" or simply "the plaintiffs," complaining of defendant Xerox Retirement Income Guarantee Plan (the "Xerox RIGP Plan"), defendant Sally L. Conkright, defendant Patricia M. Nazemetz, and defendant Lawrence M. Becker, in their respective capacities as plan administrator for the Xerox RIGP Plan hereinafter sometimes collectively referred to as "the Xerox defendants" or simply "the defendants," with respect to Counts One and Two of this complaint, and complaining of defendants Conkright, Nazemetz, and Becker individually, defendant Xerox Corporation, and defendant Hewitt Associates, hereinafter sometimes collectively referred to as "the defendant conspirators" or simply "the conspirators," with respect to Count Three of this complaint, state as follows:

<u>JURISDICTION AND VENUE</u>

1.    Jurisdiction of the subject matter of this complaint is predicated upon Section 502(a)(1)(B) of the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), which provides in pertinent part that a participant in a pension plan governed by ERISA provisions is entitled to bring suit in federal court "[a] to recover benefits due to him under the terms of his plan, [b] to enforce his rights under the terms of the plan, or [c] to clarify his rights to future benefits under the terms of the plan."

2.   Jurisdiction of the subject matter of this complaint is also based upon Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), which provides in pertinent part that a plan participant may obtain relief under ERISA Section 409, 29 U.S.C. § 1109. ERISA Section 409(a) provides in part as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

3.   Jurisdiction of the subject matter of this complaint is also based upon Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), which provides in pertinent part that a plan participant may bring a civil action

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

4.     Jurisdiction of the subject matter of this complaint is also predicated on Section 102(b) of ERISA, 29 U.S.C. §1022(b)(and related Treasury Department Regulations), which provide in pertinent part that summary plan descriptions ("SPDs") distributed to participants in pension plans governed by ERISA provisions should contain information concerning any provisions of the pension plan dealing with circumstances which may result in the denial or loss of benefits.

5.     Jurisdiction over the state law causes of action alleged in this Verified Complaint is so closely related to the claims based on ERISA such that they form a part of the same case and controversy and therefore are pendent to the federal cause of action alleged.

6.     Venue of this action is properly laid in the Western District of New York pursuant to Section 1391(b) of the United States Judicial Code, 28 U.S.C. § 1391(d).

7.     Venue of this action is also properly laid in the Western District of New York because it is intimately related to the claims made in Paul J. Frommert, et al. v. Sally L. Conkright, et al., Docket No. 00 CV 6311 (W.D.N.Y.), (hereinafter, "the Frommert action"), which was heard by the Western District of New York.

8.     The relief sought in Counts One and Two of this complaint is essentially equitable in nature and should apply to all persons similarly situated to the plaintiffs because it is based on ERISA

statutes found by the Second Circuit Court of Appeals to have been violated by the Xerox defendants.

<u>PARTIES</u>

9.   Each one of the plaintiffs are similarly situated to the named plaintiffs in the <u>Frommert</u> action.  They are or were participants in the RIGP Plan, were previously separated from employment, received at the time of such separation a distribution from the Xerox Retirement Profit Sharing Plan ("the Profit Sharing Plan"), and were rehired by Xerox prior to the publication and distribution of the September 1998 SPD.  The plaintiffs therefore constitute a category of employees hereinafter sometimes described as "Xerox rehires."

10.   As declared by District Judge David G. Larimer in <u>Frommert v. Conkright</u>, 472 F. Supp. 2d 452 (W.D.N.Y. 2007) (hereinafter "<u>Frommert 2007</u>"), "the rulings contained both in the Second Circuit decision [<u>Frommert v. Conkright</u>, 433 F.3d 254 (2d Cir. 2006), (hereinafter "<u>Frommert 2006</u>")] and in this Decision and Order <u>do</u> seem applicable to all Xerox employees who are similarly situated to the named plaintiffs." [Emphasis in original.]

11.   As stated by Kathleen Russell of Xerox Corporate Benefits in a May 21, 1997 memorandum, a copy of which is attached as Exhibit "A" to this complaint, the number of Xerox rehires impacted by this action is approximately 1,200 to 1,500.

12.   The essential ruling in <u>Frommert 2006</u> was that utilization by the Xerox plan administrators of the "phantom

account offset," consisting of the appreciated hypothetical investment value of lump sum payments or distributions previously received by the plaintiffs when previously separated from employment, was illegal with respect to plan participants who were rehired prior to the publication and distribution of the September 1, 1998 SPD.

13.   In <u>Frommert 2007</u>, Judge Larimer found that the Xerox general release form -- which defendant Xerox Corporation required plaintiffs who participated in a voluntary reduction in force ("VRIF") or involuntary reduction in force ("IRIF") to execute -- was unenforceable insofar as the Xerox defendants contended it was a bar to the claims for enhanced retirement benefits of rehired plan participants.

14.   Each plaintiff named in the caption of this action has exhausted his or her administrative remedies as required by ERISA case law or are in the process of exhausting administrative remedies.  Moreover, the exhaustion of administrative remedies requirement should be deemed to be satisfied because the Xerox defendants have demonstrated that they will reject any claim challenging implementation of the phantom account offset.

15.   Each plaintiff named in the caption of this action is more particularly identified on a schedule attached as Exhibit "B" to this complaint.  The schedule indicates his or her address, original date of hire, the amount of the lump sum payment he or she

received when previously separated from employment at Xerox, date or dates of rehire, and date of retirement, if any.

16.   Of the 86 plaintiffs, 29 are still actively employed by Xerox, and 57 have retired from Xerox.

17.   Of the 57 plaintiffs who have retired from Xerox, 52 are eligible to take down their pension benefits, and 32 have done so.

18.   Of the 57 plaintiffs who have retired from Xerox, 39 have executed the Xerox general release form in connection with their receipt of severance pay or salary continuance.

19.   During the time period relevant to this complaint, defendants Conkright, Nazemetz, and Becker were designated as the Plan Administrator for the Xerox RIGP Plan.

20.   Defendant Xerox Corporation is deemed a party defendant only with respect to the state law claims sounding in fraud asserted in Count Three of this complaint.   In <u>Frommert v. Conkright</u>, 206 F. Supp. 2d 435 (2002), Judge Larimer dismissed the claims against Xerox Corporation under ERISA Section 502(a)(1)(B) because only the plan and its administrators may be held liable in an action to recover plan benefits.   The address of defendant Xerox Corporation is 45 Glover Avenue, P.O. Box 4505, Norwalk CT 06856-4505.

21.   Defendant Hewitt Associates is an actuary employed by the Xerox defendants and defendant Xerox Corporation and is deemed a party to this action with respect to the state law claims sounding in fraud asserted in Count Three of this complaint.   The registered

agent for defendant Hewitt Associates in New York is CT Corporation System, 111 Eighth Avenue, New York, NY 10011.

### CLAIMS OF THE REPRESENTATIVE PLAINTIFFS

22.   Plaintiffs Bruce Kunsman, Stephen Dunn, Concetta Luppino, and Kevin Cass provide examples of the harsh consequences of the wrongful conduct of the Xerox defendants which fully justify the imposition of remedial injunctive relief.

23.   Plaintiff Kunsman began working for Xerox on September 30, 1968, and he received a lump sum payout of $61,623 when he was separated from employment at Xerox on October 2, 1985.

24.   Plaintiff Kunsman was rehired on June 20, 1988, and he was laid off from Xerox on November 19, 2002 at age 61.

25.   On that same day, plaintiff Kunsman attended an exit interview.   Based on his length of service at Xerox, plaintiff Kunsman reasonably expected that he would receive confirmation that he was entitled to 52 weeks of severance pay.   During the exit interview, however, plaintiff Kunsman was informed that he would not receive the severance pay to which he was entitled unless he signed the Xerox general release form.

26.   Plaintiff Kunsman had no choice but to sign the general release form during the exit interview because he was told that, if he did not sign the release immediately, he would not receive severance pay.

27.   The aforesaid intimidation tactics by the Xerox defendants acting in conjunction with defendant Xerox Corporation

were in violation of the contractual provisions of the Xerox general release form, which, among other protective provisions, states that the person executing same has 45 days from the date the release is provided to him to consider it before signing.

28.  Since his layoff, plaintiff Kunsman has been diagnosed with rheumatoid arthritis and Sjogren's disease, has had a cancerous polyp removed from his colon, and has undergone a prostate cancer procedure. Thus, he has been unable to obtain new employment.  Because of a fall, plaintiff Kunsman's wife Eileen also has been unable to work.

29.  In February 2004, despite having signed the Xerox general release form, plaintiff Kunsman received a distribution of approximately $130,000 stated to be the lump sum value of his pension entitlement from his participation in the Xerox RIGP Plan. The December 23, 2003 "Xerox Retirement Income Guarantee Plan Pension Calculation Statement" attached as Exhibit "C" to this complaint illustrates the application of the phantom account offset to substantially reduce plaintiff Kunsman's lump sum benefit of more than $600,000 under the standard RIGP benefit formula.

30.  In accordance with the methodology adopted by Judge Larimer in  Layaou v. Xerox Corp., 330 F. Supp. 2d 297 (W.D.N.Y. 2004) (hereinafter  "the Layaou 2004 methodology"),  plaintiff Kunsman would have received the approximate sum of $550,000.  See the calculation sheet attached as Exhibit "D" to this complaint. That amount is exclusive of any proceeds from the settlement in

_Anglim v. Xerox Corp._, Civ. Action No. B-83-251 (EBB) (hereinafter, "the _Anglim_ settlement"), or the Provisional Supplement benefit ("the PSB"), the eligibility for which the Xerox defendants are obligated to determine in accordance with the December 1989 SPD. In accordance with the _Layaou 2004_ methodology, exclusive of the _Anglim_ settlement and the PSB, plaintiff Kunsman would have received $420,000 more than he actually was paid.

31. The calculation sheet attached as Exhibit "D" also demonstrates that plaintiff Kunsman would have received the approximate sum of $315,000, exclusive of the _Anglim_ settlement and the PSB, as an enhanced retirement benefit under the New Hire Methodology ("the NHM"), the methodology championed by the Xerox defendants in their pending appeal of _Frommert 2007_. This methodology would have provided plaintiff Kunsman with an additional $185,000, exclusive of prejudgment interest, the _Anglim_ settlement, and the PSB, to meet his financial obligations while in retirement status.

32. The only income being received by plaintiff Kunsman and his wife is Social Security benefits. Accordingly, they face the possibility of losing their home in the near future unless they obtain on an interim basis some of the monies which plaintiff Kunsman was promised as a participant in the Xerox RIGP Plan.

33. Plaintiff Dunn began working for Xerox on March 3, 1977, and he received a lump sum payout of $25,245 when he separated from employment at Xerox on February 29, 1984.

34.  Plaintiff Dunn was rehired on September 12, 1988, and he retired from Xerox in October 2006 at age 57 because he believed that he would be financially able to afford not to work until he turned 59 and one-half, at which point he could begin to draw from IRA accounts.

35.  Plaintiff Dunn obtained information from the Xerox defendants on January 24, 2008 to the effect that, if he were to retire at that time, he would receive a pension benefit of $243,156 after applying the phantom account offset.  See the document titled "Xerox Pension Plan – RIGP Pension Calculation Statement" attached as Exhibit "E" to this complaint.

36.  By contrast, plaintiff Dunn would receive approximately $435,000, exclusive of the Anglim settlement and the PSB, as the lump sum value of his pension entitlement under the Layaou 2004 methodology.  If calculated under the NHM, plaintiff Dunn would be entitled to $335,000, exclusive of the Anglim settlement and the PSB, as more particularly set forth on the calculation sheet attached as Exhibit "F" to this complaint.

37.  In August 2007, the Xerox Benefits Center informed plaintiff Dunn that he qualified for the PSB and that the benefit thereof amounted to $65,798.03.  See the "Xerox Provisional Supp Plan Pension Calculation Statement" attached as Exhibit "G" to this complaint.  Plaintiff Dunn subsequently was inexplicably orally informed that he did not qualify for the PSB.

38.   As a result of the Xerox defendants continuing to apply the phantom account offset and their change in position about whether he qualifies for the PSB, plaintiff Dunn has retired without having the pension monies to which he is entitled under the RIGP Plan to fund his retirement years.

39.   Plaintiff Luppino began working for Xerox on March 31, 1969, and she received a lump sum payout of $32,263 when she was separated from employment at Xerox in August 1983.

40.   Plaintiff Luppino was rehired by Xerox on July 19, 1993. In early 2007, after discussing her employment status with Xerox human resources personnel, plaintiff Luppino elected to retire effective January 31, 2007.

41.   As a condition to her receipt of severance pay, plaintiff Luppino executed the Xerox general release form.

42.   A document entitled "Xerox Retirement Income Guarantee Plan – Informational Notice" dated January 18, 2008, a copy of which is attached as Exhibit "H" to this complaint, was sent to plaintiff Luppino to explain her pension benefit and how it was affected by her prior distribution.

43.   The Informational Notice states in relevant part as follows: "Although you have an active CBRA [cash balance retirement account] balance of $49,544.83 reflecting the credits that you earned since your rehire, the benefit payable as of January 17, 2008 is $0.00 per the calculation above."

44.  As demonstrated by the calculation sheet attached as Exhibit "I" to this complaint, plaintiff Luppino would receive approximately $275,000, exclusive of the _Anglim_ settlement and the PSB, as the lump sum value of her pension entitlement under the _Layaou 2004_ methodology.  If calculated under the NHM, plaintiff Luppino would be entitled to approximately $150,000, exclusive of the _Anglim_ settlement and the PSB.

45.  The factual circumstances surrounding plaintiff Cass not only constitute proof that the Xerox defendants continue to implement the phantom account offset with respect to distributions of the net lump sum of retirement benefits paid to rehired plan participants when previously separated from employment but also demonstrate that the Xerox defendants implement the phantom account offset in the event a qualified domestic relations order ("QDRO") was accepted, resulting in a distribution to a plan participant's former spouse.

46.  Plaintiff Cass began working for Xerox in March 1967, and he received a lump sum payout of approximately $15,000 when he separated from employment at Xerox in March 1978.  Plaintiff Cass was rehired in March 1982.

47.  Plaintiff Cass's ex-wife received about $78,000 in 2002 pursuant to a QDRO.  The payments she received consisted of $43,783.49 from plaintiff Cass's CBRA account and $34,931.67 from his transitional retirement account ["TRA"].

48.  On information and belief, this amount was treated as if plaintiff Cass had received a distribution which resulted in his retirement benefits being retroactively reduced so as to eliminate the accrued benefits he had earned since he was rehired.

49.  On information and belief, numerous other rehired plan participants have had the phantom account offset wrongfully applied to distributions from the RIGP Plan pursuant to a QDRO.

50.  As reflected in the calculation sheets attached as Exhibits "D," "F," and "I" to this complaint, plaintiffs Kunsman, Dunn, and Luppino are unable to ascertain the value of the Anglim settlement or the PSB.  Eligibility for either or both of these additional retirement benefits must be determined by the Xerox plan administrators, and they must also calculate the lump sum value of these benefits.

### ALLEGATIONS COMMON TO ALL COUNTS

51.  There are three categories of Xerox employees who qualify to participate in the Xerox RIGP Plan.  The first such category are Xerox employees who have been continuously employed by Xerox since 1977 and had not been separated from employment at least through the date of this complaint.

52.  This first category of Xerox employees is not adversely impacted by the phantom account offset unless they are subject to a QDRO.

53.  A second definitive category of Xerox employees are "new hires" employed by Xerox since January 1, 1990 who have qualified

to be fully vested in the Xerox RIGP Plan and have not had any break in service since their date of hire.  As with continuously employed Xerox employees, new hires are not subject to application of the phantom account offset unless, subsequent to rehire, they were subject to a QDRO.

54.  A third definitive category of Xerox employees are Xerox rehires such as the named plaintiffs in the Frommert action and the plaintiffs in this case.  This category consists of persons reemployed by Xerox who previously had been separated from employment after they had qualified to be fully vested under the Xerox RIGP Plan.

55.  Each of the plaintiffs in the third category of Xerox employees were required by the Xerox defendants to accept lump sum payments alleged to be the balance of their account in the Profit Sharing Plan when previously separated from employment.  The plaintiffs in the third category have been adversely impacted by the application of the phantom account offset based on those lump sum payments as well as any amounts distributed pursuant to a QDRO.

56.  The "pre-amendment" document that is the subject of Frommert 2006 is the 1989 Restatement of the Xerox RIGP Plan ("the 1989 Restatement").  The SPD that allegedly describes the 1989 Restatement is a document entitled "Planning for a Secure Retirement" dated December 1989 ("the December 1989 SPD"), excerpts of which are attached as Exhibit "J" to this complaint.

57.   The Introduction to the December 1989 SPD under the
caption "Retirement Security and Individual Accounts" states as
follows:

> The Xerox retirement program combines the advantages of
> <u>defined benefit plans</u> and <u>individual accounts</u>. [Emphasis
> in original.]
> ...
> The Xerox retirement program is a hybrid plan, combining
> the features of the defined benefit plan and individual
> accounts.  In the Xerox retirement program, the defined
> benefit is backed by <u>individual accounts</u>.  [Emphasis in
> original.] If your benefit would provide a greater
> benefit than the benefit yielded by the retirement income
> guarantee formula, you will receive the higher amount.
>
> Each employee has a cash balance retirement account,
> which always increases; it can never suffer negative
> investment results.  This account grows at a fixed annual
> rate.  This annual rate, which will be determined before
> the beginning of the year and which will vary from year
> to year, is based upon the prior calendar year's average
> yield of the one-year Treasury bill. ...In addition, your
> account will be credited annually with an amount equal to
> 5 percent of previous year's pay.
>
> Employees who were eligible for profit sharing in 1989
> also will have a transitional retirement account.  The
> value of this account varies--up or down--depending on
> investment results....The benefits that would be provided
> by the transitional retirement account will be compared
> with both the benefits provided by the cash balance
> retirement account and retirement income guarantee.  The
> employee will receive whichever yields the greatest
> benefit.

58.   The Introduction to the December 1989 SPD includes, under
the caption "How the Xerox Plans Stack Up," the promise made by the
Xerox defendants which the Second Circuit in <u>Frommert 2006</u> and
Judge Larimer in <u>Frommert 2007</u> have determined they have failed to
honor:  "The Xerox retirement income guarantee also exceeds the
rule of thumb used by many financial planners: If you work for a

company for 30 years, you can expect employer retirement benefits
equal to about 30 percent of pre-retirement pay."

59.   Under the caption "Retirement Income Guarantee" in the
RIGP section of the December 1989 SPD, the Xerox Plan
administrators guaranteed to pay plan participants

> whichever provides you with the greatest retirement
> benefit from these sources:
>
> •      Your benefit under the retirement income guarantee
>        formula (1.4% X highest-average pay X years of
>        service, up to 30 years and adjusted for early
>        retirement, if necessary), or
> •      Your cash balance retirement account, or
> •      Your transitional retirement account, if any.
>
> If you are eligible for benefits from other Xerox
> retirement plans, including <u>predecessor plans</u>, your
> benefit from the Retirement Income Guarantee Plan could
> be reduced to account for the income you will be
> receiving from those plans. [Emphasis in original.] <u>The</u>
> <u>amount you receive may also be reduced if you had</u>
> <u>previously left the company and received a distribution</u>
> <u>at that time; or if Xerox has accepted a qualified</u>
> <u>domestic relations order ... to distribute a portion of</u>
> <u>your funds to an alternate payee</u>. [Emphasis added.]

60.   The foregoing description of the Retirement Income
Guarantee is consistent with Section 4.3 of the 1989 Restatement
captioned "Retirement Benefits for Members who Retire on or After
January 1, 1990," with the exception that the SPD does not mention
that Section 4.3 also references the <u>Anglim</u> settlement.

61.   The next two paragraphs in the December 1989 SPD set
forth the basis for calculating the plaintiffs' retirement
benefits:

> <u>Highest-average pay</u> means the average of your pay during
> your five best-paid calendar years with Xerox after 1974;
> these years need not be consecutive.  For purposes of the

retirement program, your pay equals your base pay, overtime, bonuses, commissions and lump-sum wages (except salary continuance paid as a lump sum), up to the federally mandated limit of $200,000.  (This maximum may be indexed in the future.

The term <u>service</u>, as used in the formula, basically includes <u>all your years of employment with Xerox</u>, up to a maximum of 30 years.

62.   The statement that "service" includes "all your years of employment with Xerox" is in conflict with the definition of "Years of Service" in the 1989 Restatement, where "Years of Participation" is used to determine the amount of a member's standard RIGP annuity and "Years of Service" is used to determine the number of years which the member or plan participant is entitled to utilize in calculating his or her early retirement benefit and other retirement benefits and options under the Plan.

63.   Because the description of the pension benefits provided to plan participants in the December 1989 SPD is deemed to control in the event of any conflict, the plaintiffs and all other rehired plan participants are entitled to rely on the definition of "Years of Service" as described in the December 1989 SPD.

64.   The December 1989 SPD provides examples of how to calculate retirement benefits for plan participants, including those who elect to receive early retirement benefits.

Early retirement is defined as retirement after reaching age 55 and before age 65.  If you retire early and you have fewer than 30 years of service, your retirement benefits will be reduced by 1/12 of 5 percent for each month of your age before age 65.  With 30 years of service, your retirement benefits will be reduced by 1/12 of 5 percent for each month before age 62.

<u>See</u> "Example 3: Early retirement."

65.  The December 1989 SPD also addresses the circumstances

under which plan participants such as the plaintiffs have been

rehired.  This section, titled "Reemployment," states as follows:

> If you leave (retirement or termination of employment)
> and you return to work at Xerox before a <u>break in service</u>
> occurs, the time you did not work at Xerox will be
> counted as service for purposes of plan eligibility and
> vesting, but not for determining the amount of your
> benefits. [Emphasis in original.] However, if you leave
> Xerox for any reason and a break in service occurs, the
> time you did not work for Xerox will not be counted for
> plan eligibility and vesting.  <u>You will again begin to
> earn service when you return to work</u>.[Emphasis added]

66.  In addition to setting forth the Retirement Income

Guarantee, the December 1989 SPD sets forth the qualifications for

the PSB as follows:

> The retirement income guarantee formula introduced in
> 1989 provides, for more than 95 percent of Xerox
> employees, a retirement income guarantee that is better
> than or equal to the benefit yielded by the old
> retirement income guarantee formula.  For the average
> employee, the new formula typically results in about a <u>20
> percent improvement</u>. [Emphasis in original]

> For a few very highly paid employees, the new formula
> <u>could</u> result in a lower minimum guarantee. [Emphasis in
> original.]  To ensure that all employees receive at least
> the previous guarantee, the company has made certain
> provisions, which become effective January 1, 1990.

> <u>Using tables developed by independent actuaries, the
> company will, at their retirement, identify those
> employees for whom the new formula could produce a lower
> guarantee.</u> [Emphasis added.] The Social Security offset
> used to determine the previous minimum guarantee will be
> based on projections of today's Social Security benefits,
> adjusted for inflation using 1989 Social Security
> Administration economic projections.  If the old formula
> does yield a greater minimum, some highly-paid
> participants may be entitled to a <u>provisional supplement</u>.
> [Emphasis in original.]

The provisional supplement will make up the difference
between the old retirement income guarantee and the new
retirement income guarantee to the extent that this
difference is not made up by benefits payable from any
other source.  Other sources include, but are not limited
to, individual accounts, such as the cash balance
retirement account and transitional retirement account;
the Unfunded Retirement Income Guarantee Plan; and the
Supplemental Executive Retirement Plan.

The provisional supplement is an unfunded benefit.  As
such, it will be paid on an installment basis, from
general assets of the company.  It cannot be paid as a
lump sum, nor does it qualify for favorable tax
treatment.

67.  The "old retirement income guarantee formula" referenced in the December 1989 SPD was calculated as follows: 1.667 times highest average pay times years of service up to thirty years.  See Section 4.2 of the 1987 Restatement of the Xerox RIGP Plan, excerpts of which are attached as Exhibit "K" to this complaint.

68.  The information with respect to eligibility for the PSB is wholly within the possession of the Xerox defendants. Injunctive relief is necessary and appropriate because the Xerox defendants have failed to honor the promises made in the December 1989 SPD, which states that, "using tables developed by independent actuaries, [the Xerox defendants] will, at their retirement, identify those employees for whom the new formula could produce a lower guarantee."

69.  In addition, the Xerox defendants have the information to identify those rehired plan participants who are entitled to benefits from the Unfunded Retirement Income Guarantee Plan and/or the Supplemental Executive Retirement Plan and to determine whether

the amounts they receive from those unqualified plans offset the PSB.  Because such information is entirely in the possession of the Xerox defendants, it is an appropriate issue for injunctive relief.

70.  While the December 1989 SPD does in fact inform Xerox employees that the "amount you receive may also be reduced if you had previously left the company and received a distribution at that time; <u>or if Xerox has accepted a qualified domestic relations order ... to distribute a portion of your funds to an alternate payee</u>" [emphasis added], there is no disclosure of the fact that the Xerox defendants intended to apply the phantom account offset to an assessment against the retirement benefits of a Xerox employee subject to a QDRO.

71.  While the September 1998 SPD does inform rehired plan participants that the phantom account offset will be implemented, there is no such information regarding the QDRO.  The September 1998 SPD provides on page 48 that "Your benefit will be reduced if Xerox has accepted a Qualified Domestic Relations Order to distribute a portion of your funds to an alternate payee.  For more information, see page 70."  On page 70, the September 1998 SPD states as follows:

> Generally, payments from any qualified plan cannot be made to anyone except you, your beneficiary, or your estate.  However, under federal law, if a satisfactory Qualified Domestic Relations Order (QDRO) is submitted to Xerox, payments may be made from your account to satisfy alimony, child support, or marital property rights. Federal law sets stringent standards that the court must satisfy in order to be effective.  For instance, the order cannot require payments to be made from the retirement plan in any manner not permitted by the plan.

> The QDRO unit at the Xerox benefits center will review each order submitted.  Those that do not comply with federal law will be returned.

<u>See</u> the excerpts of the September 1998 SPD attached as Exhibit "L" to this complaint.

72.  The description in the September 1998 SPD of the impact of a QDRO on the calculation of the lump sum value of the pension entitlement of a participant in the RIGP Plan, whether continuously employed, rehired, or a new hire, constitutes a violation of ERISA requirements with respect to the information that should be contained in an SPD, as in the related <u>Frommert</u> action.

73.  The plaintiffs hereby incorporate the factual findings and conclusions of law made part of the following reported decisions:

(a)  <u>Layaou v. Xerox Corp.</u>, 238 F.3d 205 (2d Cir. 2001) (hereinafter "<u>Layaou 2001</u>").  The essential holding in <u>Layaou 2001</u> was that the Xerox defendants violated ERISA Section 102, 29 U.S.C. §1022, by failing to disclose in SPDs issued prior to the retirement of plaintiff John Layaou in 1995 the existence of the phantom account offset and the intention of the Xerox defendants to apply the phantom account offset when calculating his retirement benefits. <u>Layaou 2001</u>, 238 F.3d at 211-212.

(b)  <u>Layaou 2004</u>.  In <u>Layaou 2004</u>, the relief determined by Judge Larimer to be appropriate was what the plaintiffs in this action refer to as "the <u>Layaou 2004</u> methodology."

Setting forth his rationale for adopting this methodology,

Judge Larimer declared:

> As the Second Circuit noted [in <u>Layaou 2001</u>], "the only
> relevant language in Xerox's SPD states that the amount
> you receive may also be reduced if you had previously
> left the Company and received a distribution at that
> time.'"  There is no reference whatsoever to the "phantom
> account," either expressly or by description of its
> application and effect.
>
> All that a Plan participant would understand from the
> SPD, then, is that his benefit would be reduced because
> of the prior distribution. He would not know how or to
> what extent the benefit would be reduced, although he
> might reasonably assume that the administrator would
> simply subtract out the value of the prior distribution.
> ...
> The Second Circuit has observed that "it is of no effect
> to publish and distribute a plan summary booklet designed
> to simplify and explain a voluminous and complicated
> document, and then proclaim that any inconsistencies will
> be governed by the plan."  In the case at bar, the
> conspicuous absence of any reference to or explanation of
> the "phantom account" offset, coupled with the annual
> benefit statements that had been provided to Layaou,
> would clearly have misled him into believing that his
> monthly benefit would be considerably higher than it
> turned out to be. That mistaken belief would likely have
> affected plaintiff's financial planning for his upcoming
> retirement ....
>
> Having reached this conclusion [that plaintiff Layaou had
> established "likely prejudice" as a result of the faulty
> SPD], the Court must decide on an appropriate remedy;
> Since it is the SPD, not the Plan itself, that controls
> here, and since the SPD did not mention the "phantom
> account" offset, I believe that the administrator should
> recalculate plaintiff's benefit without using any
> "phantom account" at all. In other words, when comparing
> plaintiff's three retirement benefit formulas, no
> "phantom account" should be added to his CBRA or TRA, nor
> should the "phantom account" be subtracted out from his
> actual benefit.
>
> That does not mean, of course, that the prior lump-sum
> distribution cannot be taken into account at all. Even
> the faulty SPD indicated that the participant's "RIGP
> benefit may be reduced" if he had received a prior

distribution. It would not be unreasonable, then, for the administrator to subtract out the amount of the prior distribution; otherwise, plaintiff would receive a windfall, since under the RIGP formula he would be getting credit for all his years of service at Xerox, including years for which he had already received benefits. [Citations and footnotes omitted.]

(c) <u>Frommert 2006</u>.  In <u>Frommert 2006</u>, the Second Circuit held that the Xerox Plan administrators had violated ERISA Section 204(g), which prohibits retroactive reductions of accrued benefits, and ERISA Section 204(h), which requires that the plan administrator provide at least 15 days' prior written notice to each rehired plan participant describing any proposed plan amendment which would result in a significant reduction in the rate of future accruals. <u>Frommert 2006</u>, 433 F.3d at 263.

The holding of the Second Circuit in <u>Frommert 2006</u> constitutes the law of this case binding on the Xerox defendants.  As part of its opinion, the Second Circuit references its holding in <u>Layaou 2001</u> and held that, where there was a conflict in interpreting the December 1989 SPD and the language of the 1989 Restatement, the SPD governs.  To more particularly state the holding of the Second Circuit in <u>Frommert 2006</u>, we cite the following from its January 6, 2006 decision:

[We] find, as a matter of law, that the phantom account was not part of the Plan until 1998 when it was added by amendment of the Plan's text through its explanation in the 1998 SPD. Based on this finding, we hold that application of the phantom account by the defendants prior to its inclusion in the Plan by amendment constituted a prohibited reduction of justified expectations of rehired employees' accrued benefits in contravention of §204(g). We also hold that the defendants failed to meet their obligations to provide

advance notice of the amendment as required by §204(h), meaning that the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD. ...

Like the plaintiffs here, [the plaintiff in Layaou 2001] had previously been employed by Xerox and taken a lump-sum distribution at the time of his first separation from Xerox. Layaou was rehired in 1987 and subsequently retired in 1995, when the phantom account was applied to his benefit calculation and reduced his expected benefits from $ 924 under the RIGP formula to $ 124 under the CBRA. The only notice that Layaou had received concerning the non-duplication of his benefits was contained in Xerox's annual SPD, which simply provided that "the amount you receive may also be reduced if you had previously left the Company and received a distribution at that time." Nowhere did the SPD address the issue of a phantom account or explain that Layaou's benefits would be offset by a hypothetically appreciated value of his prior lump-sum distribution. As a result, we held that the Plan violated ERISA's SPD requirement, [ERISA Section 102,] 29 U.S.C. § 1022, by failing to "provide notice to Layaou and other similarly situated employees that their future benefits would be offset by an appreciated value of their prior lump-sum benefits distributions."

Even though the instant case does not involve a challenge under § 1022, the holding in Layaou [2001] is of significance here because of the central role that the SPD plays in communicating the terms of a plan to its members. "ERISA 'contemplates that the [SPD] will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." Further, the SPD is of such importance that "where the terms of a plan and the SPD conflict, the SPD controls." ...

It is clear that the application of the phantom account reduced the amount of benefits on which the employees had justifiably relied. [Emphasis added.] ... Thus, although the application of the phantom account does not directly deplete an employee's pension account, by altering the comparative process, it imposes a condition on the payment of benefits that leads just as surely to a decrease. See Cent. Laborers' Pension Fund v. Heinz, 541 U.S. 739, 744-45 (2004). Indeed, on remand in a Western District of New York case [Layaou 2004] involving this same Plan, the court reached this exact conclusion when assessing the impact of the phantom account on the plaintiff's benefits: "It resulted in a significant

reduction in plaintiff's benefits, compared to what he would have received without the offset...."

We find that this reduction of justified expectations of benefits took the form of a retroactive cut-back in violation of § 204(g). Employees rehired prior to 1998 worked and accrued benefits under a Plan that did not provide for reduction of their benefits by factoring in the hypothetical value of a phantom account....

On remand, the remedy crafted by the district court for those employees rehired prior to 1998 should utilize an appropriate pre-amendment calculation to determine their benefits.... As guidance for the district court, we suggest that it may wish to employ equitable principles when determining the appropriate calculation and fashioning the appropriate remedy. [Citations omitted.]

(d) <u>Frommert 2007</u>.  <u>Frommert 2007</u> held that the <u>Layaou 2004</u>

methodology should be applied when calculating the lump sum value

of the plaintiffs' retirement benefits. As found by Judge Larimer:

Although the Circuit [in <u>Frommert 2006</u>] clearly precluded use of the phantom account in determining how to treat prior distributions, it did little to elucidate what formula should be adopted, except to suggest using an "appropriate pre-amendment calculation" guided by equitable principles in determining the appropriate remedy for affected employees.
...
I must interpret the [RIGP] Plan as written and consider what a reasonable employee would have understood to be the case concerning the effect of prior distributions. If the employee had no notice of the "phantom account," he also had no notice of some of the other mechanisms suggested by witnesses at the remand hearing before me. What is "best" from a financial or actuarial point of view is not what the Court has been charged with determining. The Court's task, as directed by the Court of Appeals, is simply to determine, based on the language of the Plan and the SPD, what benefits are now due this group of rehired employees.
...
As the Court of Appeals noted, there was no description whatsoever [in the pre-amendment SPD] as to the mechanics of this so-called phantom account. For that reason, the Second Circuit and other courts rejected the

administrator's utilization of such a mechanism in calculating benefits.
...
The question, then, is what, in light of these vague provisions in the Plan and SPD, this Court should to do to remedy the violation of ERISA. I believe that the best course is to do what I did previously in <u>Layaou</u> [2004] involving a similar remand from the Court of Appeals. In <u>Layaou</u> [2004], I directed the administrator "to recalculate plaintiff's retirement benefit, ... and to pay plaintiff a lump sum in the amount of the difference between the amount of benefits that plaintiff has received, and the amount of the recalculated benefit, without any consideration of a 'phantom account.'" I added that "[i]t would not be unreasonable ... for the administrator to subtract out the amount of the prior distribution," in order to avoid giving the plaintiff a windfall....

The same process should apply here. This process is straightforward; it adequately prevents employees from receiving a windfall, and I believe it most clearly reflects what a reasonable employee would have anticipated based on the not-very-clear language in the Plan and SPD. Again, if there is some doubt or ambiguity as to this formula, it must be resolved in favor of the employee. [Citations omitted.]

74. In <u>Frommert 2007</u>, Judge Larimer also held that the Xerox general release form that some of the plaintiffs had signed in connection with their receipt of severance pay was unenforceable, contrary to the assertion of the Xerox plan administrators that execution of the release form constitutes a waiver of claims for enhanced retirement benefits under ERISA. Judge Larimer predicated his decision in part on language contained in the release stating that the consideration received by way of the severance pay or salary continuance is "in addition to anything of value to which [the employee] is entitled by law and/or Xerox policy." The

foregoing ruling made part of the Frommert 2007 decision and order constitutes the law of this case.

75.  The Frommert 2007 decision also referenced a motion by the plaintiffs for leave to file a second amended complaint to add the similarly situated plaintiffs identified as members of "the Carville group" and "the Falcon group" to the Frommert action.  In discussing that motion, Judge Larimer stated as follows:

> The gist of the motion was that following the remand from the Second Circuit [in Frommert 2006], additional Xerox employees who had been separated from and then rehired by Xerox prior to 1998 contacted plaintiffs' counsel, seeking to join in or obtain the benefits of this lawsuit.  Plaintiffs' counsel wrote to the Plan administrator, essentially asking him to waive these individuals' exhaustion requirements under ERISA and apply the rulings of this Court and the Court of Appeals in this case and in Layaou to these additional Plan participants.  The administrator's response was, essentially, that until a "final resolution" of this action, the phantom account offset would continue to be applied to all Plan participants, with "no exception or deviation."

> To the extent that any of the proposed new plaintiffs have not yet retired from Xerox, I see no basis for adding them to this lawsuit. As stated earlier, the Second Circuit's holding that "the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD," would certainly seem to foreclose defendants from utilizing the phantom account in calculating "new" retirees' pension benefits. [Citations omitted.]

76.  Having determined that the decision in Frommert 2007 would be applied to persons similarly situated to the named plaintiffs, counsel for the plaintiffs in this action withdrew a motion to file a second amended complaint which would have added as interveners similarly situated plaintiffs described as the

"Carville Group" and the "Falcon Group" and identified in the
proposed caption for the second amended complaint as follows:
Richard O. Carville, Jr., Mary Ellen Sullivan, Robert F. Palermo,
Robert G. Didas, Neal Gorla, Victoria N. Lorenzetti, Paul John
Marshall, Robert Pohlemus, Guy Pietrantoni, Katherine McCarthy,
Bruce Kossuth, Richard J. Cutri, Stephen T. Dunn, Donna E. Beckles,
Nick Desario, Ruth M. Falcon, Kathy McDaniel, John R. Wagner, Jr.,
Concetta Luppino, Anne M. Trocano, James J. Tanney, Bruce Kunsman,
and Ellen J. Ohstrom.  The court thereafter denied the motion as
moot.  A copy of the court's order is attached as Exhibit "M" to
this complaint.

77.  The March 6, 2007 order staying the effect of Frommert
2007 pending appeal, granted without any need for the Xerox
defendants to post a bond, was specifically predicated on the
following ruling by Judge Larimer:

> If a stay is not granted, defendants will be obligated to
> pay out substantial sums to retired Xerox employees
> pursuant to the formula directed by this Court in its
> January 24 Decision [in Frommert 2007]. Sums would also
> be due to employees who signed releases which this Court
> determined would not preclude recovery by those
> employees. If defendants are successful on appeal, it
> will be difficult, if not impossible, to recover sums
> paid out to plaintiffs and others similarly situated.

Notably, the March 6, 2007 order did not modify the order by the
Second Circuit in Frommert 2006 that the phantom account could not
be applied to plan participants rehired prior to the publication of
the September 1998 SPD.

**THE WRONGFUL CONDUCT OF THE XEROX DEFENDANTS
MANDATES INJUNCTIVE RELIEF
TO COMPEL THE RECALCULATION OF RETIREMENT BENEFITS
AND TO IMPOSE AN EQUITABLE LIEN**

78.   The Xerox defendants wrongfully failed to disclose in SPDs distributed to the plaintiffs before the September 1998 SPD that the defendants intended to apply the phantom account offset and to utilize a comparative methodology resulting in Xerox rehires receiving the lowest rather than the highest benefit among the three alternative retirement benefit sources or components of the Xerox RIGP Plan made effective January 1, 1990.

79.   As found by the Second Circuit in <u>Frommert 2006</u>, the defendants, in violating ERISA Sections 204(g) and 204(h) by utilizing the phantom account offset to retroactively reduce retirement benefits earned through length of service by the plaintiffs and by failing to provide at least 15 days' prior written notice to each rehired plan participant describing any proposed plan amendment which would result in a significant reduction in the rate of future accruals, violated ERISA provisions designed to protect the retirement benefits of long-term workers from being forfeited or confiscated.

80.   Likewise, the Xerox defendants violated ERISA Sections 204(g) and 204(h) with regard to plan participants, whether continuously employed, rehired, or new hires, who were subject to a QDRO.

81. It is black-letter law that a plaintiff seeking an injunction must demonstrate: (1) that he or she will suffer an irreparable injury if injunctive relief is not granted, (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) that the public interest would not be disserved by granting an injunction. See, e.g., eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006).

82. The rehired plan participants have experienced or will experience irreparable injury because they have been or will be deprived of the secure retirement promised to them to fund their "golden years." Moreover, some of the rehired plan participants will lack the financial resources to make mortgage payments, thereby causing them to lose their homes.

83. In light of the current economic circumstances of which the Court can take judicial notice, remedies available at law are inadequate to compensate the rehired plan participants for the financial distress that has reached the point that some of them face losing their homes.

84. Balancing the hardships tilts decidedly in favor of the rehired plan participants, many of whom are retired, face dire financial straits as a result of the conduct of the Xerox defendants, and may lose their homes. A declaratory judgment requiring the defendants to pay the lump sum value of the

plaintiffs' pension entitlements calculated under the NHM as an interim measure pending the defendants' appeal of Judge Larimer's determination to apply the <u>Layaou 2004</u> methodology does not constitute any hardship on the defendants since the amount of the plaintiffs' pension entitlements can be no less than that calculated pursuant to the NHM.

85.  Finally, the public interest would be served by issuance of an injunction prohibiting further implementation of the phantom account offset to discourage other employers from engaging in similar egregious conduct.  In addition to its deterrent effect, the grant of the injunction requiring the defendants to pay on an interim basis the lump sum value of the plaintiffs' pension entitlements calculated under the NHM will go far to assuage the public perception that the defendants have been able to manipulate the judicial system to avoid for more than eight years paying retirement benefits promised to the plaintiffs, thus making a mockery of the protections to pensioners that Congress intended ERISA to provide.

86.  It is the law of this case that the principles underlying the concept of fiduciary obligations owed by plan administrators of a defined benefit plan to provide plan participants with information material to investment decisions, such as planning for a secure retirement, were violated when the Xerox defendants failed to disclose in the December 1989 SPD that they intended to implement the phantom account offset to eliminate or severely

diminish the pension benefits to which rehired plan participants were entitled.

87.   The December 1989 SPD, which is the pre-amendment SPD referenced in Frommert 2006, is in conflict with non-duplication of benefits provisions in the 1989 Restatement that, if they had been properly disclosed in the pre-amendment SPD, may have been utilized by the Xerox defendants as the basis for calculating the enhanced retirement benefits to which rehired plan participants were entitled.

88.   The first such provision in the 1989 Restatement is Section 1.44f, part of the definition of "Years of Participation" which states as follows: "No credit shall be given for any period with respect to which a lump sum payment has been made under Sections 8.5 and 8.8." As found in Frommert 2006, Section 8.5 of the 1989 Restatement addresses lump sum distributions of benefits of the type received by the plaintiffs, while Section 8.8 deals with an issue unrelated to this case--the procedures to be followed if a plan participant or her spouse are adjudged incompetent.

89.   Although Section 1.44f therefore provides some authority in the Plan for the NHM which the Xerox defendants champion in their appeal of Judge Larimer's adoption of the Layaou 2004 methodology in Frommert 2007, it is clear that Judge Larimer, in stating that he gave consideration to the alternative methodologies presented in hearings held prior to his decision, determined that the NHM was not an equitable method of assuring non-duplication of

benefits since the NHM was not disclosed in the controlling December 1989 SPD.

90.   A third alternative method of calculating the retirement guarantee in a manner so as to avoid duplicate payments is alleged to be provided by Section 9.6, captioned "Nonduplication of Benefits."

91.   When read in connection with Section 1.1 of the 1989 Restatement, captioned "Accrued Benefit," this third alternative method of calculating rehired plan participants' retirement benefits has been construed by the Xerox defendants to be the equivalent of the phantom account offset through the introduction of an interest factor on the amount received by the rehired plan participant when previously separated from employment.

92.   It is clear that Judge Larimer, when stating that he gave consideration to the alternative methodologies presented in hearings held prior to his decision, determined that  Section 9.6 did not provide an equitable method of assuring non-duplication of benefits since such a method was not disclosed in the controlling December 1989 SPD.

93.   Accordingly, consistent with the findings of the Second Circuit in Frommert 2006, Judge Larimer in Frommert 2007 was constrained to find that, in the event of a conflict between the pre-amendment Xerox SPD and provisions in the 1989 Restatement, the pre-amendment SPD controls.

94.  Because the December 1989 SPD does not even mention these alternative methods of calculating the Retirement Income Guarantee, Judge Larimer was entirely within the discretion given to him by the Second Circuit to conclude that the proper relief for the ERISA violations found by the Second Circuit to have been committed by the Xerox defendants would be to calculate the lump sum value of rehired plan participants utilizing both periods of employment but deducting therefrom only the actual amount received by the plaintiffs in lieu of the phantom account offset.

95.  In their brief in chief on appeal, excerpts of which are attached as Exhibit "N" to this complaint, the Xerox defendants ask the Second Circuit to find that the NHM is appropriate to be applied in the circumstances of this case.

> By definition, [the term] "Years of Participant" [sic] does not include credit for any period with respect to which a payment has previously been made.  When read in conjunction with the other relevant provisions of the pre-1998 Plan, Section 1.44(f) would require that appellees' retirement benefits be calculated without inclusion of their years of prior service.  Their prior service would, however, still be relevant, upon their being rehired, for purposes of vesting.
> ...
> The District Court should have relied on these terms of the pre-1998 Plan and ordered that appellees' benefits be recalculated using these plan provisions.  Such a "new hire" method fully comports with this Court's January 6, 2006 Order.
> ...
> For this second period of employment, and based upon the pre-1998 Plan terms, each appellee would be entitled to a minimum benefit equal to the greatest of the annuity benefits provided by:
>     (a) the employee's [TRA], determined without adding back or subtracting out the employee's prior distribution;

> (b) the employee's [CBRA], also determined without
> adding back or subtracting out the employee's prior
> distribution; and
> (c) the employee's annuity benefit under the Plan's
> ... formula based upon 1.4% percentage [sic] of the
> employee's highest average compensation multiplied by the
> employee's "Years of Participation" in the Plan, as
> defined in Section 1.44(f) of the pre-1998 Restated Plan.
> Years of participation would therefore not include those
> years for which appellees had been paid prior
> distributions.

Xerox defendants' appellate brief at 32-34.

96.   In their reply brief dated June 18, 2007, portions of which are attached as Exhibit "O" to this complaint, the Xerox defendants further contend that the NHM should have been the method adopted by Judge Larimer:

> As testified to by Lawrence Sher, the actuarial expert
> offered by appellants, the new hire approach would
> benefit the appellees and result in treating them
> similarly to other plan participants.  Appellees had been
> paid out whatever they were entitled to during their
> first stint of employment, and they would be entitled to
> the same retirement benefits as a new employee for their
> subsequent stint(s).   Thus, contrary to what appellees
> would have the Court believe, their pension payment would
> reflect all years of service.

Xerox defendants' reply brief at 18.

97.   Based on the foregoing contentions of the Xerox defendants in their submissions to the Second Circuit, appropriate equitable relief would be to enjoin further implementation of the phantom account offset to rehired plan participants and to require that the Xerox defendants calculate the enhanced retirement benefits due to all rehired plan participants under the <u>Layaou 2004</u> methodology pending the outcome of the appeal of <u>Frommert 2007</u>.

98.  Granting this relief would enable the numerous plan participants such as the plaintiffs here and the named plaintiffs in the _Frommert_ action who have been victimized by the conduct of the Xerox defendants to borrow against the amount calculated under the _Layaou 2004_ methodology as the reasonable expectation of their award from this lawsuit.

99.  We respectfully submit that appropriate equitable relief requires that, _as an interim measure_, the Xerox defendants calculate the enhanced retirement benefits due to all rehired plan participants under the NHM pending the outcome of the appeal of _Frommert 2007_.

100. Appropriate equitable relief, consistent with the recent decision of the U.S. Supreme Court in _Sereboff v. Mid Atlantic Medical Services, Inc._, 547 U.S. 356 (2006), contemplates that an equitable lien be imposed on the assets of the RIGP Plan.  The lien should be imposed in the amount owed to the rehired plan participants who had their retirement benefits retroactively reduced in violation of ERISA Section 204(g) in accordance with the _Layaou 2004_ methodology decreed by Judge Larimer, as well as the projected amount of enhanced retirement benefits to be received by the rehired plan participants who are not yet eligible to take down their pension entitlement or are still actively employed by Xerox.

101. Equitable relief in the form of a lien is consistent with Section 9.10 of the 1989 Restatement, which is included in Exhibit "P" to this complaint and provides as follows:

> If at any time any doubt exists as to the right of any person to any payment hereunder <u>or as to the amount of time of such payment</u> [sic] ... the Administrator shall be entitled, in his discretion, to direct the Trustee (or any insurance company) to hold such sum as a segregated amount (on an interest bearing basis) in trust until such right or amount or time is determined or until order of a court of competent jurisdiction, <u>or to pay such sum into court in accordance with appropriate rules of law in such case then provided</u>, or to make payment only upon receipt of a bond or similar indemnification....

[Emphasis added.] Although Section 9.10 refers to the discretion of the plan administrator, no such discretion should be afforded in this case because the defendant plan administrators have demonstrated that they have a conflict of interest in that they repeatedly act in the best interests of the employer rather than the employees to whom they owe a fiduciary obligation.

102. It logically follows from <u>Sereboff</u> and Section 9.6 of the 1989 Restatement that the concept of equitable relief made part of ERISA Section 502(a)(3) mandates that the Xerox defendants give notice to all plan participants rehired prior to the publication date of the September 1998 SPD and all plan participants whose retirement benefits have been adversely affected by a QDRO that they may apply on an interim basis for enhanced retirement benefits based on the NHM.

<u>FIRST COUNT</u>
(Claims Predicated Upon
the Xerox Defendants'
Continued Illegal Use of
<u>the Phantom Account Offset</u>)

103. The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through 102 of this

complaint as if they had been more fully set forth herein at
length.

104. In light of the foregoing, all plan participants rehired
prior to the publication of the September 1998 SPD and all other
plan participants subject to a QDRO are entitled under ERISA
Section 502(a)(1)(B) and/or ERISA Section 502(a)(3) to injunctive
relief (a) enjoining the defendants from applying the phantom
account offset to retroactively reduce retirement benefits earned
by rehired plan participants who received distributions from the
Profit Sharing Plan when previously separated from employment and
to continuously employed plan participants whose benefits were
reduced by a QDRO; (b) compelling the Xerox defendants to
recalculate retirement benefits due to the rehired plan
participants and continuously employed plan participants subject to
a QDRO based on the Layaou 2004 methodology so as to establish the
amount of the equitable lien to be imposed on funds controlled by
the Xerox defendants; (c) compelling the Xerox defendants to
identify the rehired plan participants who are entitled to the
benefit of the Anglim settlement and/or the PSB, to calculate the
amount of these additional benefits to which they may be entitled,
and to provide the balances of their CBRA accounts and their TRA
accounts, if any; (d) compelling the Xerox defendants to inform all
persons similarly situated to the named plaintiffs in the Frommert
action of this litigation and to invite them to apply to have their
pension entitlements calculated based on the Layaou 2004

methodology and the NHM pending the outcome of the defendants'
appeal of <u>Frommert 2007</u>; and (e) compelling the Xerox defendants to
provide the relief requested in paragraphs (a) through (d) to plan
participants regardless of whether they  signed the Xerox general
release form.

**<u>SECOND COUNT</u>**
**(Claims Predicated Upon**
**Breach by the Xerox Defendants**
**<u>of Fiduciary Obligations Owed</u>)**

105. The plaintiffs repeat and reallege each and every
allegation set forth in paragraphs one through 104 of this
complaint as if they had been more fully set forth herein at
length.

106. Based on the decisions of the Seventh Circuit in <u>Berger
v. Xerox Corp. Ret. Income Guarantee Plan</u>, 338 F.3d 755 (2003), the
Second Circuit in <u>Frommert 2006</u>, and the Ninth Circuit in <u>Miller v.
Xerox Corp. Ret. Income Guarantee Plan</u>, 464 F.3d 871 (2006), the
Xerox defendants must be deemed to be serial violators of ERISA
statutes designed to protect the interest of pensioners.

107. As provided in ERISA Section 413, 29 U.S.C. §1113:

No action may be commenced under this subchapter with
respect to a fiduciary's breach of any responsibility,
duty, or obligation under this part, or with respect to
a violation of this part, after the earlier of — (1) six
years after (A) the date of the last action which
constituted a part of the breach or violation, or (B) in
the case of an omission the latest date on which the
fiduciary could have cured the breach or violation, or
(2) three years after the earliest date on which the
plaintiff had actual knowledge of the breach or
violation; except that in the case of fraud or
concealment, such action may be commenced not later than

six years after the date of discovery of such breach or violation.

108.  Pursuant to the statute quoted above, the claims of rehired plan participants set forth in this complaint are timely because the defendants' wrongful conduct described in this complaint constitutes an ongoing breach of fiduciary obligations owed to rehired plan participants.

109.  The statutory violations by the Xerox defendants also violate the terms of the 1989 Restatement. As set forth in Section 10.5 of the 1989 Restatement, which is included in Exhibit "P" to this complaint, the Administrator shall act "In accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of Title I of ERISA."

110. Under case law interpreting ERISA, the conduct of a plan administrator towards participants in a pension plan governed by ERISA provisions such as the Xerox RIGP Plan is also governed by common law principles of trust and fiduciary obligations.

111. The defendants have a fiduciary obligation to particularly disclose to Xerox rehires such as the plaintiffs all material information relating to the calculation of their pension benefits.

112. The wrongful conduct of the Xerox defendants in continuing to apply the phantom account offset as of the date of this complaint to significantly reduce retirement benefits under the three alternative sources or components when the redesigned

Xerox RIGP Plan made effective on January 1, 1990 constitutes a continuing violation of fiduciary obligations owed to the plaintiffs.

113. As further equitable relief which will benefit all plan participants in the RIGP Plan in accordance with ERISA Section 502(a)(2), the court should enter an injunction removing defendant Becker as plan administrator, permanently disqualifying any Xerox employee from serving in that capacity, and appointing a third party unaffiliated with Xerox as a fiscal agent to perform the duties of plan administrator.

WHEREFORE, the plaintiffs hereby demand judgment against the Xerox defendants, jointly and severally, on Counts One and Two of this complaint as follows:

(a) For an order enjoining the defendants from applying the phantom account offset to retroactively reduce retirement benefits earned by rehired plan participants who received distributions from the Profit Sharing Plan when previously separated from employment and to continuously employed plan participants whose benefits were reduced by a QDRO;

(b) For an order compelling the Xerox defendants to recalculate retirement benefits due to the rehired plan participants and continuously employed plan participants subject to a QDRO based on the Layaou 2004 methodology so as to establish the amount of the equitable lien to be imposed on funds controlled by the Xerox defendants;

(c) For an order compelling the Xerox defendants to identify the rehired plan participants who are entitled to the benefit of the <u>Anglim</u> settlement and/or the PSB, to calculate the amount of these additional benefits to which they may be entitled, and to provide the balances of their CBRA accounts and their TRA accounts, if any;

(d) For an order compelling the Xerox defendants to inform <u>all</u> persons similarly situated to the named plaintiffs in the <u>Frommert</u> action of this litigation and to invite them to apply to have their pension entitlements calculated based on the <u>Layaou 2004</u> methodology and the NHM pending the outcome of the defendants' appeal of <u>Frommert 2007</u>;

(e) For an order compelling the Xerox defendants to provide the relief requested in paragraphs (a) through (d) to plan participants regardless of whether they  signed the Xerox general release form;

(f) For an order removing defendant Becker as plan administrator, permanently disqualifying any Xerox employee from serving in that capacity, and appointing a third party unaffiliated with Xerox as a fiscal agent to perform the duties of plan administrator;

(g) For an order awarding reimbursement of all litigation expenses incurred, including, but not limited to, reasonable attorney's fees and other costs of suit; and

(h)  For an order awarding such other and further relief as this court may deem appropriate and equitable in the premises.

**THIRD COUNT**

**(Claims Predicated Upon The Conspiracy
To Defraud Rehired Plan Participants and
Continuously Employed Plan Participants Subject to a QDRO)**

114. The claims asserted in this count are state law claims pendent to the ERISA claims alleged in the Counts One and Two.

115. The defendant RIGP Plan is not a party to the conspiracy alleged in this count.

116. The claims asserted in this count comport with principles of preemption under ERISA and the holding of **Mertens v. Hewitt Associates**, 508 U.S. 248 (1993).

117. Beginning on or about January 1, 1990, the defendant conspirators, acting through the defendant plan administrators, made one or more false representations of fact regarding the conditions of employment to the named plaintiffs and omitted material information regarding the conditions of employment in communications with the named plaintiffs.

118. Those misrepresentations and omissions include, but are not limited to:

(a)  failing to disclose in SPDs and personal benefit statements issued prior to September 1, 1998 the intent of the defendant conspirators to implement a phantom account offset for which there was no authority to do so in the December 1989 SPD or the 1989 Restatement;

(b) failing to disclose in SPDs and personal benefit statements the intent of the defendant conspirators to implement the phantom account offset on plan participants subject to a QDRO;

(c) retroactively reducing the accrued benefits earned by rehired plan participants since their rehire and plan participants subject to a QDRO in violation of ERISA Section 204(g);

(c) failing to give the notice required by ERISA Section 204(h) of amendments to the RIGP Plan that would substantially reduce the rate of future benefit accruals;

(d) representing the Xerox general release form as a waiver of rights to retirement benefits under the Xerox RIGP Plan; and

(e) making false and misleading statements in response to administrative claims filed by aggrieved plan participants that the phantom account offset was part of the RIGP Plan document.

119. At the time that the above representations and/or omissions were made, the defendant conspirators knew or believed them to be false.

120. At the time that the above representations and/or omissions were made, the defendant conspirators intended to deceive the named plaintiffs.

121. At all times relevant, the named plaintiffs believed and justifiably relied on the statements prepared by and distributed by defendant Xerox Corporation through the defendant plan administrators in the pre-amendment SPD that were intended to advise the plaintiffs how to plan for a secure retirement, and the

named plaintiffs were induced to take certain actions or made certain decisions concerning his or her retirement plans.

122. At all times relevant, the named plaintiffs believed and justifiably relied on communications by defendant Hewitt Associates that contained misleading information about the amount of their pension benefits.

123. As a direct and proximate result of the fraudulent conduct by the defendant conspirators, the plaintiffs and persons similarly situated to them have suffered and continue to suffer damages.

124. On or about January 1, 1990, defendant Xerox Corporation, defendant Nazemetz, and defendant Hewitt Associates entered into a conspiracy to defraud Xerox rehires through a scheme whereby they would knowingly violate statutory provisions designed to protect the rights of pensioners through misrepresentations and intimidation, resulting in the conversion of retirement funds promised to this group of Xerox employees into Xerox assets and the reduction of the pension liability of defendant Xerox Corporation.

125. Through this fraudulent conversion scheme of the defendant conspirators, defendant Xerox Corporation sought to avoid its obligation under Section 3.1 of the 1989 Restatement. Section 3.1 is included in Exhibit "P" of this complaint and provides in part that "It is intended that the Employer will make such contributions as are necessary to fund the Plan in accordance with the [Internal Revenue] Code and ERISA."

126. On or about March 1, 1999, defendant Conkright joined the conspiracy by accepting the position of Plan Administrator and continuing the wrongful acts described in Count Three.

127. On or about February 1, 2000, defendant Becker joined the conspiracy by accepting the position of Plan Administrator and continuing the wrongful acts described in Count Three.

128. The defendant conspirators have continued to the date of this complaint to defraud rehired plan participants by implementing the phantom account offset, notwithstanding the decision in <u>Layaou 2001</u> that the SPD in effect at the time of plaintiff Layaou's retirement was false and misleading because it failed to disclose the intent of the defendant Plan administrators to implement the phantom account offset when the individual rehired plan participants sought to take down their pensions.  It is anticipated that the court will reach the same result with respect to the implementation of the phantom account offset on plan participants subject to a QDRO.

129. As described herein, the conduct of the defendant conspirators is so egregious that it demands an award of punitive damages to deter similar intentional wrongful conduct in the future.  The amount of such damages should be three times the amount determined by the court to constitute compensatory damages.

WHEREFORE, the plaintiffs hereby demand judgment against the defendant conspirators, jointly and severally, on Count Three of this complaint as follows:

(a) For an award of compensatory damages equal to the amount converted by the defendants;

(b) For an award of special, exemplary, and punitive damages;

(c) For an order awarding reimbursement of all litigation expenses incurred, including, but not limited to, reasonable attorney's fees and other costs of suit; and

(d) For an order awarding such other and further relief as this court may deem appropriate and equitable in the premises.

DEMAND FOR A JURY TRIAL

The plaintiffs hereby demand a trial by jury on the pendent state law claims identified in Count Three of the complaint.


Dated:  February 20, 2008

                              ROBERT H. JAFFE & ASSOCIATES, P.A.
                              Attorneys for the Plaintiffs


                              /s/

                              _____

                              Mark B. Watson, Esq. (MW0439)
                              Robert H. Jaffe & Associates
                              8 Mountain Avenue
                              Springfield, New Jersey
                              (973) 467-2246


                              George A. Schell, Sr., Esq.
                              SCHELL & SCHELL, P.C.
                              410 Perinton Hills Office Park
                              Fairport, New York 14450
                              (585) 377-2682

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

WESTERN           **DISTRICT OF**           NEW YORK

BRUCE D. KUNSMAN, ET AL.          **SUMMONS IN A CIVIL CASE**

**V.**          CASE NUMBER:

SALLY L. CONKRIGHT, ET AL.

TO: (Name and address of defendant)

HEWITT ASSOCIATES, L.L.C
c/o CT CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK  10011

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

MARK B. WATSON, ESQ.
ROBERT H. JAFFE, ESQ.
ROBERT H. JAFFE & ASSOCIATES, P.A.
EIGHT MOUNTAIN AVENUE
SPRINGFIELD, NEW JERSEY  07081

an answer to the complaint which is herewith served upon you, within _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

CLERK                    DATE

(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action

## RETURN OF SERVICE

|  |  |
|---|---|
| Service of the Summons and Complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____
_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐ Returned unexecuted: _____
_____
_____
_____

☐ Other *(specify)*: _____
_____
_____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
|  |  |  |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____      _____
Date                                    Signature of Server

_____
Address of Server

(1)   As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.