UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRUCE D. KUNSMAN,

                                        Plaintiff,

                                                        DECISION AND ORDER

                                                        08-CV-6080L

                        v.

SALLY L. CONKRIGHT, et al.,

                                        Defendants.

_____


        This action is one of several before the Court involving similar claims under the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.*, by current and

former employees of Xerox Corporation ("Xerox"), relating to the manner in which plaintiffs'

pension benefits have been calculated.[1]  The details of the claims in this action will be explained

below, but in short, they relate to the treatment of prior distributions of plaintiffs' accrued

benefits when calculating plaintiffs' current or future benefits.

        Currently pending before the Court is a motion to dismiss filed by defendants, as well as a

motion to stay filed by one of the plaintiffs, Joseph McNeil.  The following constitutes the

Court's decision on those motions.


                                **BACKGROUND**


        As stated, this action is one of a set of related cases.  In general, these cases involve

plaintiffs who worked for Xerox and were members of Xerox's pension plan ("Plan"), who left

_____

        [1]The other actions are *Frommert v. Conkright*, 00-CV-6311, *Anderson v. Xerox*, 06-6202;
*Holland v. Becker*, 08-CV-6171; *Testa v. Becker*, 10-CV-6229; and *Clouthier v. Becker*, 08-CV-
6441.

Xerox's employ, at which time they received lump-sum distributions of retirement benefits earned up to that point, and who were later rehired by Xerox.

After the plaintiffs were rehired, a question arose as to how to account for the past distributions to them when calculating the benefits owed to those plaintiffs upon their eventual retirement. The Plan Administrator initially interpreted the Plan to call for an approach that has come to be known as the "phantom account" method. Essentially, that method calculated the hypothetical growth that the plaintiffs' past distributions would have experienced if the money that had been distributed to them had remained in Xerox's investment funds, and reduced their present benefits accordingly.

Some of the affected employees took issue with that approach, and in 2000, a number of them commenced a lawsuit in this Court, *Frommert v. Conkright*, 00-CV-6311.[2] *Frommert* has an especially tortuous history, but in short, on appeal from a decision of this Court, which held that the phantom account could be applied to the plaintiffs in that case, the Court of Appeals for the Second Circuit held that the Plan Administrator's interpretation was unreasonable, and that "the phantom account was not part of the Plan until 1998 when it was added by amendment of the Plan's text through its explanation in the 1998 SPD [summary plan description]." 433 F.3d 254, 263 (2d Cir. 2006). The court also held that "the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD," because those employees had not been adequately notified that the phantom account method would be used to calculate their benefits. However, the court added, "for employees rehired subsequent to the amendment of the Plan

_____

[2]The full procedural history of the *Frommert* litigation can be gleaned from a number of reported cases, familiarity with which is assumed for purposes of this Decision and Order. *See Conkright v. Frommert*, ___U.S. ___, 130 S.Ct. 1640 (2010); *Frommert v. Conkright*, 535 F.3d 111 (2d Cir. 2008); *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006); *Frommert v. Conkright*, 639 F.Supp.2d 305 (W.D.N.Y. 2009); *Frommert v. Conkright*, 472 F.Supp.2d 452 (W.D.N.Y. 2007); *Frommert v. Conkright*, 328 F.Supp.2d 420 (W.D.N.Y. 2004); and *Frommert v. Conkright*, 206 F.Supp.2d 435 (W.D.N.Y. 2002).

through the 1998 SPD, the phantom account is a component of the Plan that they joined and thus may permissibly be applied to them." *Id.*

The quoted language from the Second Circuit effectively encapsulates the Second Circuit's ruling. The phantom account was not added to the Plan until the issuance and distribution of the 1998 SPD. It may not be applied to employees rehired prior to their receipt of the 1998 SPD, but it may be applied to employees rehired thereafter.

The Court of Appeals remanded the *Frommert* action to this Court, with directions to craft a remedy for those employees rehired prior to 1998. On remand, this Court adopted an approach put forward by the *Frommert* plaintiffs. 472 F.Supp.2d 452 (W.D.N.Y. 2007). The details of that approach are not significant here, because after the Second Circuit affirmed this Court's decision in relevant part, 535 F.3d 111, the United States Supreme Court granted review, and reversed the Court of Appeals' decision. The Supreme Court held that "[t]he Court of Appeals erred in holding that the District Court could refuse to defer to the Plan Administrator's interpretation of the Plan on remand ... ." 559 U.S. 506, ___, 130 S.Ct. 1640, 1650 (2010). The Court added that "[a]pplying a deferential standard of review does not mean that the plan administrator will prevail on the merits. It means only that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Id.*, 130 S.Ct. at 1651 (quoting *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

On remand from the Supreme Court, this Court then issued another decision, adopting the Plan Administrator's new interpretation of the relevant portions of the Plan. 825 F.Supp.2d 433 (2011). That interpretation involves calculating each plaintiff's benefit as an annuity beginning at the plaintiff's normal retirement age, *i.e.*, age sixty-five, and incorporating into that calculation an offset of the participant's accrued benefit by the "actuarial equivalent" of the prior distribution. *Id.* at 439-40. The plaintiffs in *Frommert* have appealed from that Decision and Order, and the appeal is now pending before the Second Circuit.

After the *Frommert* action began, several other similar lawsuits were filed, both by individual plaintiffs and by groups of plaintiffs.  The instant case, *Kunsman*, was filed by eighty-three current and former Xerox employees on February 21, 2008.  The complaint is explicitly based on the various decisions in *Frommert* and other cases concerning the Xerox Plan.

The complaint in *Kunsman* asserts four causes of action:  (1) for benefits under 29 U.S.C. §§ 1132(a)(1)(B)[3] and for injunctive relief under 1132(a)(3)[4]; (2) under 29 U.S.C. § 1104 for breach of fiduciary duty; (3) under § 1104, based on defendants' alleged failure to administer the Plan for the benefit of participants; and (4) a state law claim for conspiracy to defraud.

## DISCUSSION

## I. Timeliness

Defendants' motion to dismiss is based in part on their assertion that plaintiffs' claims are time-barred.  An analysis of this issue requires some familiarity with the limitations periods applicable to the various types of ERISA claims presented here.

### A. Claims under § 1132:  General Principles

Section 1132(a)(1)(B) creates a cause of action for beneficiaries of an ERISA plan to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ... ."  ERISA does

---

[3]Section 1132(a)(1)(B) permits an action by a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ... ."

[4]Section 1132(a)(3) permits an action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ... ."

not contain a specific limitations period for actions brought under this statute. *See Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009). Instead, the controlling limitations period is generally provided by the "most nearly analogous state limitations statute." *Id.* In cases brought in New York, courts use the six-year period for breach of contract claims. *See Muto v. CBS Corp.*, 668 F.3d 53, 57 (2d Cir. 2012); *Miles v. New York State Teamsters Conf. Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983)).

The plan itself may provide for a shorter limitations period, however. *See Epstein v. Hartford Life and Accident Ins. Co.*, 449 Fed.Appx. 46, 47 (2d Cir. 2011); *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009). In the case at bar, the Plan sets forth a limitations period of one year, a fact that was disclosed in the 1998 SPD. *See* Dkt. #6-3 at 73 (participant must bring any action "within one year after the cause of action accrued").

With respect to the commencement of the limitations period, the Court of Appeals for the Second Circuit has held, in the context of a claim under § 1132(a)(1)(B), that "a cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff–regardless of whether the plaintiff has filed a formal application for benefits." *Carey v. International Broth. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999). "[A]ccrual is triggered by either actual knowledge or constructive knowledge of a clear repudiation." *Id.* at 48 n.4. That standard has its roots in the law of trusts, under which the limitations period governing a claim against a trust fiduciary begins to run when there has been a clear repudiation by the fiduciary of his responsibility to properly administer the trust. *See In re Barabash's Estate*, 31 N.Y.2d 76, 79-80 (1972) (quoted in *Valle v. Joint Plumbing Indus. Bd.*, 623 F.2d 196, 202 n.10 (2d Cir. 1980)).

Since a clear repudiation of a participant's claim for benefits does not necessarily require a formal application for benefits, it follows that it also does not require a formal denial of a claim.  The Second Circuit has held that the issuance of a summary plan description ("SPD") that clearly spells out how benefits will be calculated can constitute a clear repudiation of claims or understandings that are inconsistent with its terms, and thereby trigger the commencement of the limitations period with respect to such claims.  *See Hirt v. Equitable Retirement Plan*, 285 Fed.Appx. 802, 803 (2d Cir. 2008) ("distribution of the ... SPD constituted a clear repudiation" of plaintiffs' entitlement to benefits and triggered the statute of limitations); *see also Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 410 (6th Cir. 2010) (notice of changes to benefit plan, "especially the notice provided by the SPD, ... provided the 'clear repudiation' necessary for the subclass's claims to accrue").

In its 2006 *Frommert* decision, the Court of Appeals emphasized "the central role that the SPD plays in communicating the terms of a plan to its members."  433 F.3d at 265.  That "important role in disclosure goes both ways:  just as employees may rely on the terms of the plan as described in the SPD, so may a clear description in the SPD put them on notice of that plan's terms, including its clear repudiation of a claim for benefits."  *Bilello v. JPMorgan Chase Ret. Plan*, 607 F.Supp.2d 586, 593-94 (S.D.N.Y. 2009).

In *Carey*, the Second Circuit explained the reasons for the clear-repudiation rule, which lie in the purposes of limitations periods generally, "including rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses."  201 F.3d at 47 (citing *Wilson v. Garcia*, 471 U.S. 261, 271 (1985)).  "For these reasons, statutes of limitation 'are not to be disregarded by courts out of a vague sympathy for particular litigants.'  Indeed, strict adherence to limitation periods 'is the best guarantee of evenhanded administration of the law.'"  *Id.* (quoting *Baldwin County*

*Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam), and *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

In adopting this rule, the court in *Carey* relied in part on the undesirability of an alternative rule based on the plaintiff's formal submission of a claim. The court noted, for instance, that to hold that an ERISA claim accrues only upon denial of a formal application for benefits would produce "potentially great" delays in addressing claims, *id.* at 48. The court also observed that "[m]erely by delaying his formal application for benefits–for strategic reasons or otherwise–a plaintiff could sue long after he initially pursued his claims with the plan." *Id.* at 49. Finally, the court cautioned against any rule that "would ... render the statute of limitation meaningless," by allowing an employee who had unsuccessfully pursued his claim through informal channels to "revive his stale claim merely by filing a formal application" for benefits. *Id. See also Winnett*, 609 F.3d at 410 ("If a company announces the removal of, say, a dental-care benefit, the claim accrues *on the date of the company's announcement and notice*, not the first day the affected individual needs dental work. Were it otherwise, the limitations period would start at a different point for every employee or retiree, even though they all work (or worked) for the same company and even though they all face the same change in benefits") (emphasis added).

**B. Timeliness of the § 1132(a)(1)(B) Claim in this Case**

The Second Circuit has made clear that "the details of the phantom account offset functions were set out in full in the 1998 Summary Plan Description ('SPD')," *Frommert*, 433 F.3d at 260, and that "the phantom account was fully explained" in that SPD, *id.* at 262. The court went on to state that "the 1998 SPD amended the text of the Plan to include the phantom account and comparative methodology by fully setting out how they are used to calculate rehired

employees' benefits," and that "the 1998 SPD adequately describes the offset procedure." *Id.* at 268-69.  From 1998 onwards, then, the phantom account has been a part of the Plan.

Given those statements by the Second Circuit, it is difficult to see how the 1998 SPD could be viewed as anything other than a clear repudiation of plaintiffs' claims that the phantom account should not have been applied to them.  That SPD made it quite clear that benefits would be reduced based on the hypothetical growth of the employee's prior lump-sum distribution.

Plaintiffs' contention that their claims did not accrue until the Second Circuit's 2006 *Frommert* decision, *see* Plaintiffs' Mem. (Dkt. #10) at 8-9, is misplaced.  The question is not when plaintiffs knew that a *court* had issued some particular pronouncement about the Plan, but when they knew or should have known that there had been a "clear repudiation *by the plan*." *Carey*, 201 F.3d at 48 (emphasis added).  Plaintiffs are confusing their knowledge of defendants' acts with their knowledge of whether a court determined that those acts were wrongful.  It is the former, not the latter, that triggers the limitations period.  *See Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520-21 (3d Cir. 2007) (stating that ERISA's "clear repudiation" rule has evolved from the general federal rule that "a statute of limitations begins to run when a plaintiff discovers or should have discovered the *injury* that forms the basis of his claim") (emphasis added).  To rule otherwise would lead to the nonsensical result that a claim would not accrue until after the claim has been presented to a court and been ruled upon.

Plaintiffs have also suggested that their § 1132(a)(1)(B) claim did not accrue until their administrative claims were denied on November 13, 2006.  Plaintiff's Mem. at 8.  Again, the 1998 SPD made quite clear how the phantom account worked, and effectively amended the Plan. *Frommert*, 535 F.3d at 116.  To hold that plaintiff's cause of action did not accrue until their administrative claims were formally denied would allow plaintiffs to avoid the statute of limitations by the simple act of filing a claim, and would ignore the Second Circuit's directive that a cause of action under § 1132(a)(1)(B) "accrues upon a clear repudiation by the plan that is

known, or should be known, to the *plaintiff–regardless of whether the plaintiff has filed a formal application for benefits.*" *Carey*, 201 F.3d at 49.

I recognize that in its 2006 *Frommert* decision, the Court of Appeals held that the "the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD." 433 F.3d at 263.  In 2007, this Court also stated that "[i]t is clear [from the Second Circuit's 2006 decision] that Xerox may not lawfully use the phantom account mechanism, as to either the named plaintiffs in this lawsuit, or anyone else who was rehired by Xerox prior to 1998, after having previously received a distribution of pension benefits." 472 F.Supp.2d at 456-57.

In making those statements, however, neither this Court nor the Court of Appeals was concerned with limitations issues, insofar as they might affect claims for benefits under the Plan. Neither court stated or implied that claims under § 1132(a)(1)(B) based on the application of the phantom account to pre-1998 rehires might not be time-barred.  In fact, this Court stated, with respect to the *Frommert* plaintiffs' motion to amend the complaint to add new plaintiffs, that "there may be issues involving individualized defenses or other matters bearing upon the motion to amend ... ." 472 F.Supp.2d at 467.  Thus, the Second Circuit's holding precluding the application of the phantom account to employees rehired prior to 1998, while it may show that such an act was unlawful, does not relieve beneficiaries of their obligation to timely file suit to protect their rights.

It is therefore unnecessary for the Court to decide whether plaintiffs' claim is governed by the one-year contractual limitations period, or the six-year period that would otherwise be applicable.  Even if the Court were to apply a six-year limitations period, plaintiffs' time within

which to file suit asserting a claim for benefits under § 1132(a)(1)(B) expired in 2004, *i.e.*, six years after plaintiffs' receipt of the 1998 SPD.[5]

Plaintiff McNeil has argued that his claim for benefits did not accrue until his administrative appeal was denied in August 2007.  That argument is foreclosed by the Second Circuit's holding in *Carey* that "a cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff–regardless of whether the plaintiff has filed a formal application for benefits."  201 F.3d at 49 (2d Cir. 1999).

Finally, I note plaintiffs' assertion that "[b]ecause the amendment to the RIGP Plan implementing the phantom account offset was deemed in *Frommert 2006* to be ineffective as to plan participants rehired before the publication and distribution of the 1998 SPD, no statute of limitations defense can be raised as a bar to the claim that their pension entitlement should be calculated on a methodology other than one which incorporates the phantom account offset."  Dkt. #17 at 4.  Plaintiffs appear to take the remarkable position that their claims are not subject to *any* limitations period.  Not surprisingly, they offer no legal support for that assertion, and it is not the law.

**C. Claim for Breach of Fiduciary Duty**

Under ERISA § 413, 29 U.S.C. § 1113, a claim for breach of fiduciary duty must be brought within "six years after ... the date of the last action which constituted a part of the breach ...," or "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation," whichever is earlier.  "[A] plaintiff has 'actual knowledge of the breach or violation' within the meaning of ERISA § 413(2), 29 U.S.C. § 1113(2), when he has knowledge

---

[5]The back cover of the 1998 SPD, entitled "You & Xerox," bears a date of September 1998.  *See* Dkt. #6-3.  It is not clear from the record exactly what date the SPD was issued or distributed to employees, but there does not appear to be any dispute here that it was published sometime in 1998, over nine years before this action was filed in February 2008.

of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001).

To apply this standard here, it is first necessary to identify the alleged breaches of fiduciary duty. The amended complaint, however, is not particularly specific concerning the nature of the alleged breach or breaches.

In large part, the complaint simply alleges that all of defendants' alleged wrongful acts, including those that form the basis for plaintiffs' claims for benefits under § 1132(a)(1)(B), constitute a breach of defendants' fiduciary duties. To the extent that plaintiffs' fiduciary-duty claim merely duplicates their claims for benefits, however, it does not state a valid, independent claim. *See Harrison v. Digital Health Plan*, 183 F.3d 1235, 1237 n.1 (11th Cir. 1999) (finding no error in district court's dismissal of plaintiff's claim for breach of fiduciary duty as duplicative of claim for recovery of benefits); *France v. PNC Financial Services Group, Inc.*, No. 12-268, 2013 WL 3279772, at *5 (W.D.Pa. June 26, 2013) ("At bottom, Plaintiff's fiduciary duty claims turn on the purported wrongful denial of benefits, and he seeks money damages on the same basis. The claims, therefore, are duplicative of his benefits claim, and they ... will be dismissed") (citation omitted).

There are more specific possible bases for plaintiffs' claim of breach of fiduciary duty, but I find that, with one exception, they are time-barred. Again, some background is necessary, concerning both this litigation and the *Frommert* case.

In *Frommert*, the Second Circuit held that this Court erred in holding that the three-year, "actual knowledge" limitations period began to run when Xerox's 1995 Benefits Update was issued. In so holding, the court stated that "the plaintiffs' claim for breach of fiduciary duty is not premised solely on the defendants' adoption of the phantom account; rather, it is based on allegations that the defendants made ongoing misrepresentations about the origins of the phantom account in an effort to justify its usage." 433 F.3d at 272.

In many respects, plaintiffs' allegations in the case at bar track those advanced in *Frommert*. Plaintiffs allege that defendants "ma[de] false and misleading statements in response to administrative claims filed by aggrieved plan participants that the phantom account offset was part of the RIGP Plan document." Dkt. #4 ¶ 130(e). Although that allegation is made in the context of plaintiffs' claim for conspiracy to defraud, it indicates that one basis for their claim for breach of fiduciary duty is defendants' alleged misrepresentations concerning the purported justification for the phantom account. In other words, plaintiffs allege that defendants represented to Plan participants that the phantom account was a part of the Plan, at a time when in fact it was not.

When the Court of Appeals in *Frommert* discussed defendants' alleged misrepresentations concerning the justification for the phantom account, however, the court was speaking with reference to the 1995 Benefits Update, which, the court held, did not effectively amend the Plan. The court stated that "[w]hile the substance of the Benefits Update made clear the full import of the phantom account, its form was insufficient to effectively amend the text of the Plan," and that the Benefits Update "was insufficiently 'accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan,' 29 U.S.C. § 1022(a), to be an SPD." 433 F.3d at 267 (additional internal quote omitted). The court went on to state that "learning the manner in which the phantom account functions was not sufficient to provide 'actual knowledge' that a breach of fiduciary duty had occurred. ... Such knowledge of an actual breach could only come with disclosure of the fact that the defendants misrepresented the terms of the Plan in justifying the usage of the phantom account." *Id.* at 272-73.

As stated, the Court of Appeals also held that the phantom account was not properly added to the Plan until the issuance of the 1998 SPD, which did effectively amend the Plan. *Id.* at 262, 267. The 1995 Benefits Update itself, then, allegedly constituted a misrepresentation,

insofar as it purported to explain and justify the operation of a phantom account that was not, at that time, provided for by the Plan.

Having so ruled, the Court of Appeals in *Frommert* remanded the action to this Court, with directions "to determine when the plaintiffs had actual knowledge of the alleged breach of the defendants' fiduciary duties." *Id.* at 273. Such a determination ultimately proved unnecessary, since on remand I determined that this Court's rulings on the *Frommert* plaintiffs' other claims effectively provided them with all of the relief to which they might be entitled. 472 F.Supp.2d at 466.

Because of the similarity of the issues raised in these several cases, following the Second Circuit's remand in *Frommert*, this Court issued an Order in this *Kunsman* case (Dkt. #47), and in the other related cases, directing the parties to file further submissions addressing some of the issues raised in the Second Circuit's decision in *Frommert*. One question that the Court put to the parties was "whether I can determine as a matter of law, from the face of the complaint[ in each of these cases], at what point the plaintiffs had actual knowledge of the defendants' alleged breach of their fiduciary duty." Dkt. #47 at 3. The Court also inquired about "when the last alleged act constituting a part of the breach occurred," and whether "plaintiffs sufficiently pleaded fraud or concealment to warrant the application of a six-year period from the date of discovery[.]" *Id.* at 4.

Insofar as plaintiffs' claims are based on a theory of misrepresentation as to the justification for the phantom account, I find that such a claim is time-barred, as a matter of law. In fact, as to such a claim, plaintiffs' actual knowledge of the alleged breach is irrelevant, since it is clear that the last act that could have constituted the breach occurred no later than September 1998, when the Plan was amended through the issuance of the SPD, more than six years before this action was commenced.

-13-

Again, the Court of Appeals' reference to alleged misrepresentations about the terms of the Plan was made with reference to the 1995 Benefits Update, which was ineffective to amend the Plan. That all changed upon the issuance of the 1998 SPD. Plaintiffs themselves recognize that under the Second Circuit's *Frommert* decision, the 1998 SPD did amend the Plan to provide for the phantom account. *See* Amended Complaint (Dkt. #4) at ¶ 80(c) (stating that "[t]he holding of the Second Circuit in <u>Frommert 2006</u> constitutes the law of this case" and quoting that decision's statement that "the phantom account was not part of the Plan until 1998 *when it was added by amendment of the Plan's text through its explanation in the 1998 SPD*") (emphasis added).

Once the phantom account was added to the Plan in 1998, the alleged misrepresentations referred to by the Second Circuit necessarily came to an end. At that point, the phantom account *was* a part of the Plan, and thus there was no longer any need, or even ability, for defendants to misrepresent the terms of the Plan in an effort to justify the usage of the phantom account. Likewise, I see no basis for any allegation of fraud or concealment as to this claim; the 1998 SPD was quite clear as to the operation of the phantom account.

Plaintiffs also allege that defendants' continuing application of the phantom account to them "constitutes an ongoing breach of fiduciary obligations owed to rehired plan participants." Amended Complaint ¶ 115. In other words, plaintiffs allege that defendants have engaged in a continuing breach of their fiduciary duties, that continues to this day.

In *Novella v. Westchester County*, 661 F.3d 128 (2d Cir. 2011), the Second Circuit rejected a continuing-violation theory in the context of a claim alleging that the defendants had miscalculated the plaintiff's benefits. The court stated:

> We think that [continuing-violation] method is appropriate in ERISA cases, as elsewhere, only where separate violations of the same type, or character, are repeated over time. Usually, these cases are marked by repeated decision-making, of the same character, by the fiduciaries. But it is not as clear a fit in cases where, as here, the plaintiff's claims are based on a single decision that results in lasting negative effects.

*Id.* at 146 (citations and alterations omitted).   Ultimately, the Second Circuit in *Novella* held that "notice of a miscalculation can be imputed to a pensioner–and the statute of limitations will start to run–when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation."   *Id.* at 147.

To the extent that plaintiffs' claims are based on defendants' continued, uninterrupted application of the phantom account to employees rehired before 1998, I find such a theory untenable here.   Although this action does not involve an alleged miscalculation of benefits, plaintiff's claims are not based on repeated, similar decisions, but on discrete, individual decisions, particularly the decision prior to 1998 to apply the phantom account to rehired employees, notwithstanding the absence from the Plan of any language providing for the phantom account.   Some plaintiffs, in *Frommert*, successfully challenged that decision, but there were no repeated decisions after 1998 that constituted new, repeated breaches of fiduciary duty in that regard.

I am not persuaded by plaintiffs' argument that defendants have waived a statute of limitations defense by failing to raise such a defense during the administrative claims process. The case relied upon by plaintiffs, *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 381 (2d Cir. 2002), is inapposite.   *Lauder* involved an insurer's waiver of its defense of lack of disability. That is substantively different from a limitations defense to a judicial action.   One would hardly expect a plan administrator to assert a statutory defense applicable to judicial actions, in the context of an administrative claim.   I therefore reject plaintiffs' waiver argument.   *Cf. Shutts v. First UNUM Life Ins. Co.*, 310 F.Supp.2d 489, 493-95 (N.D.N.Y. 2004) (finding that insurer waived right to dispute timeliness of claim under *contractual* notice-of-claim provision).

I reach a different result, however, with respect to plaintiffs' allegation concerning "the Plan Administrator's failure to inform each ... Plaintiff that in calculating pension benefits that fiduciary would ignore court rulings that specifically outlawed the phantom account."   Plaintiff's Mem. (Dkt. #51) at 13.   In 2006, the Court of Appeals for the Second Circuit explicitly held that

-15-

"the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD."  433 F.3d at 263.  Notwithstanding that clear directive, defendants have allegedly continued to do precisely what the Court of Appeals proscribed:  *i.e.*, they have allegedly continued to apply the phantom account to employees rehired prior to issuance of the 1998 SPD.

ERISA requires that a plan fiduciary "discharge his duties ... solely in the interest of the [plan's] participants and beneficiaries."  29 U.S.C. § 1104(a)(1).  Even if the fiduciary has some obligations to the employer, the fiduciary must "wear the fiduciary hat when making fiduciary decisions."  *Holdeman v. Devine*, 572 F.3d 1190, 1193 (10th Cir. 2009) (quoting *In re Luna*, 406 F.3d 1192, 1207 (10th Cir. 2005), and *Pegram v. Herdrich,* 530 U.S. 211, 225 (2000)).

While a fiduciary necessarily has some discretion in carrying out his or her duties, that discretion is not unbridled, as § 1104(a)(1) makes clear.  A plan fiduciary must act solely in the interest of the plan participants and beneficiaries, when making fiduciary decisions.  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Management Inc.*, 712 F.3d 705, 715 (2d Cir. 2013).

In light of that standard, I find that plaintiffs have stated a facially valid claim for breach of fiduciary duty based on their allegation that defendants have ignored and refused to follow the Second Circuit's directives in its 2006 *Frommert* decision.  I also find that this claim is not time-barred.

Notably, the Court of Appeals in *Frommert* did not state that "the phantom account may not be applied to *plaintiffs* rehired prior to the issuance of the 1998 SPD," or that it may not be applied to employees who timely filed suit.  The court stated that "the phantom account may not be applied to *employees* rehired prior to the issuance of the 1998 SPD."  433 F.3d at 263 (emphasis added).  This language was not ambiguous.  It could not be any clearer:  the phantom account may not be used.  It is hard to imagine how anyone could read the Second Circuit's directive and still persist in using the phantom account.  This is especially so for a fiduciary.

It is difficult to see, then, how the plan administrator could read the Second Circuit's language in *Frommert*, and continue to apply the phantom account to employees rehired before 1998, consistent with that decision and with the administrator's fiduciary duty to act in the interest of plan participants.  In fact, in this Court's January 24, 2007 decision in *Frommert*, I denied the plaintiffs' motion to amend the complaint to add additional plaintiffs, stating, *inter alia*,

> To the extent that any of the proposed new plaintiffs have not yet retired from Xerox, I see no basis for adding them to this lawsuit.  [T]he Second Circuit's holding that "the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD," 433 F.3d at 263, would certainly seem to foreclose defendants from utilizing the phantom account in calculating "new" retirees' pension benefits.

472 F.Supp.2d at 467.

In addition, while there were later appeals in the *Frommert* action, including the Supreme Court's decision in 2009, those appeals involved the remedy to be implemented for defendants' ERISA violations; they had nothing to do with the propriety of using the phantom account methodology.  The Second Circuit's holding that it was improper to apply the phantom account to pre-1998 rehirees has not been affected by any later proceedings in *Frommert* or any of these actions.  Thus, the mere fact that there have been further appeals and other proceedings in *Frommert* does not excuse defendants from their obligation to follow the Court of Appeals' directives in that case.

That is not to say, however, that there are no consequences for plaintiffs' having sat on the sidelines during the *Frommert* litigation, and waiting until 2008 to file suit.  As outlined above, many of plaintiffs' claims are time-barred.  From the pleadings, it appears that plaintiffs in the *Kunsman* action have been in possession of the same relevant information as the *Frommert* plaintiffs.

What the *Kunsman* plaintiffs could not have foreseen, however, was that defendants would ignore the directives of the Second Circuit, and continue to apply the phantom account to

Xerox retirees, after the issuance of the *Frommert* decision in 2006.  In my view, that provides a sufficient basis for a claim for breach of fiduciary duty, based on defendants' alleged breach of their duty to discharge their duties "solely in the interests of the participants and beneficiaries" of the Plan.  Such a claim could not have arisen prior to the issuance of the Second Circuit's decision on January 6, 2006.  As to that claim, then, this action, which was filed on February 21, 2008, is timely, under either the three- or six-year statute of limitations for breach of fiduciary duty claims.  Defendants' motion to dismiss this claim as time-barred is therefore denied.


**II. QDRO Claims**

Defendants have also moved to dismiss plaintiffs' claim based on the application of the phantom account to qualified domestic relations orders ("QDROs").  In short, a QDRO is an order, typically entered in a divorce proceeding, "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan ... ."  29 U.S.C. § 1056(d)(3)(B).  In other words, a typical QDRO directs that a participant's ex-spouse receive a portion of the participant's benefits under the plan.

Plaintiffs allege that even after defendants disclosed the existence and methodology of the phantom account, they failed to disclose that the phantom account offset would be applied as to QDRO distributions.  Dkt. #4 ¶¶ 75, 76.  Defendants contend that this claim should be dismissed for lack of standing.

To the extent that plaintiffs allege that their ex-spouses, or some other third parties, have had or will have their benefits reduced because of a QDRO, I agree with defendants that plaintiffs lack standing to assert such a claim.  "As an aspect of justiciability, standing asks whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial

-18-

powers on his behalf." *Fillmore East BS Finance Subsidiary LLC v. Capmark Bank*, No. 11 Civ. 4491, 2013 WL 1294519, at *6 (S.D.N.Y. Mar. 30, 2013) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)) (additional internal quotes omitted).  *See, e.g.*, *King v. Pension Trust Fund of the Pension Hospitalization and Benefit Plan of the Elec. Industry*, 131 Fed.Appx. 740, 741 (2d Cir.) (plan participant did not have standing to challenge "freeze" provision of pension plan, despite his contention that provision cut back benefits of two non-party participants, where participant personally suffered no injury), *cert. denied*, 546 U.S. 1031 (2005); *see also Gagliardi v. Kratzenberg*, 188 Fed.Appx. 86, 88-89 (3d Cir. 2006) ("To the extent that Gagliardi complained of alleged wrongs in tax assessment and collection ... when he sought to vindicate the rights of his ex-wife, ... he lacked standing").

In addition, insofar as plaintiffs allege that their own benefits have been or will be reduced due to QDROs, their claim fails on the merits.  As plaintiffs themselves recognize, the 1998 SPD explains, "Your benefit will be reduced if Xerox has accepted a Qualified Domestic Relations Order to distribute a portion of your funds to an alternate payee."  *See* Dkt. #22-3 at 52. The SPD also explains generally what a QDRO is and pursuant to a valid QDRO, "payments may be made from your account to satisfy alimony, child support, or marital property rights."  *Id.* at 74.

Plaintiffs nonetheless contend that defendants violated ERISA because they "failed to disclose the fact in the September 1998 SPD or any subsequent SPD that the lump sum value of a distribution pursuant to a QDRO would be illegally reduced by the phantom account offset." Amended Complaint ¶ 79.  This contention is meritless.  The 1998 SPD quite clearly spelled out the operation of the phantom account.  *See* Dkt. #22-3 at 55.  Plaintiffs were given no reason to think that distributions made pursuant to a QDRO would be treated any differently from any other distributions.  There is thus no basis for this claim.

-19-

### III. Conspiracy to Defraud

Plaintiffs have also asserted a claim under state law for conspiracy to defraud, based on defendants' alleged failure to disclose the existence and operation of the phantom account. This claim must be dismissed as preempted by ERISA.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Toward that end, ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 514(a).

Based on this language, the Supreme Court has held that ERISA preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." Davila, 542 U.S. at 209. Only where a plaintiff seeks "to remedy [a] violation of a legal duty independent of ERISA" does ERISA not preempt a state law claim. Id. at 214. But where a state-law conspiracy claim touches implicates matters governed by ERISA, it is preempted. *See*, *e.g.*, *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1219 (5th Cir. 1992) (finding that a state law civil conspiracy claim, when related to an ERISA plan, was preempted by ERISA); *Earley v. Liberty Life Assur. Co. of Boston*, No. 13-CV-1099, 2013 WL 3772509, at *1 (M.D.Fla. July 16, 2013) ("Common law causes of action for breach of contract, negligence, conspiracy and/or fraud are preempted by ERISA").

Plaintiffs argue that this claim is not preempted because it does not require any interpretation of the terms of the Plan, and that ERISA preemption is not as broad as defendants contend. I am not persuaded by these arguments. Plaintiffs' claim is plainly based on their allegation that defendants misrepresented or concealed the terms of the Plan, and the relief sought relates to plaintiff's benefits under the Plan. This claim is therefore preempted by ERISA. *See Haasl v. Leach Co.*, No. 02-C-1184, 2004 WL 1584128, at *8 (E.D.Wisc. Feb. 17, 2004) ("The alleged fraud or misrepresentation here is that Yakley falsely said that the terms of the

Leach plan were X, when actually they were Y.  ... At their heart, all of these claims must 'relate to' an ERISA plan because they are based on misrepresentations about the terms of an ERISA plan"); *De Pace v. Matsushita Elec. Corp.*, 257 F.Supp.2d 543, 570 (E.D.N.Y.2003) (fraudulent misrepresentation claim preempted by ERISA where claim required plaintiff to prove that a pension plan existed, that defendant misrepresented the terms of the plan, and that plaintiff relied on the misrepresentations).

**IV. Claims Related to the *Anglim* Settlement and the Provisional Supplement**

The complaint makes reference to a settlement in *Anglim v. Xerox Corp.*, and to a Provisional Supplement benefit ("PSB").  Dkt. #4 ¶ 35.  The Plan provides that individual Plan members who were employed between certain dates will be entitled to benefits calculated according to a specified formula, "provided, however, that any such member shall not be entitled to a benefit under this subsection ... if the proposed settlement as set forh in a settlement agreement pertaining to <u>Anglim, et al v. Xerox Corpoation</u>, Civil Action No. B-83-251 (EBB) ... is not consummated pursuant to such settlement agreement for any reason ... ."  Dkt. #6-4 at 16; #133-6 at 26.

The 1998 SPD also states that "[t]he current retirement plan formula, introduced in 1990 provides most employees with at least an equal benefit as that provided under the previous formula, but that "[t]o ensure that all employees who were employed on December 31, 1989 receive at least the previous guarantee, Xerox will make up the difference with a provisional supplement."  The SPD explains how the PSB will be calculated, and states that "[p]ayment of any provisional supplement is made outside the qualified plan and will be in the form of a lump sum only, at about the time you take your RIGP benefit."  1998 SPD at 48.

The complaint alleges that the plaintiffs affected by the *Anglim* settlement and the PSB "are unable to ascertain the value of the <u>Anglim</u> settlement or the PSB," and that defendants

"should be compelled to calculate the lump sum value of these benefits." Dkt. #4 ¶ 55. Defendants now contend that plaintiffs' claims regarding the *Anglim* settlement and the PSB should be dismissed for failure to exhaust administrative remedies.

I agree with defendants that such claims must be dismissed. First, these claims are not even fully articulated. The complaint references these matters, but fails to show how or why plaintiffs' rights have been violated, or that they are entitled to relief. Section 502(a)(1)(B) does provide for a cause of action to clarify one's plan benefits, but the complaint must still provide a factual basis for relief. The complaint here fails to do so.

As to exhaustion, plaintiffs argue that under the Supreme Court's decision in *LaRue v. DeWolff, Boberg & Associates*, 552 U.S. 248 (2008), plaintiffs need not exhaust claims for equitable relief. *LaRue* in fact said no such thing. The Court in *LaRue* expressly "d[id] *not* decide whether [the plaintiff] was required to exhaust remedies set forth in the Plan before seeking relief in federal court pursuant to § 502(a)(2) ... ." *Id.* at 253 n.3 (emphasis added). *See also Stargel v. SunTrust Banks, Inc.*, ___ F.Supp.2d ___, 2013 WL 4775918, at *16 n.1 (N.D.Ga. 2013) ("Exhaustion of administrative remedies is required prior to bringing an ERISA breach of fiduciary duty claim") (citing *Springer v. Wal-Mart Assocs. Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990)).

I recognize that "a failure to exhaust ERISA administrative remedies is not jurisdictional," *Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006), but plaintiffs have offered no support for their assertion that exhaustion here would have been futile. In addition, plaintiffs have admitted that some Plan participants have received benefits pursuant to the *Anglim* settlement, *see* Plaintiffs' Mem. (Dkt. #10) at 17, and that this claim and the issues relating to it may well be moot. *Id.* For all these reasons, then, plaintiffs' claims concerning the *Anglim* settlement and the PSB are dismissed.

**V. Propriety of Claims under ERISA § 502(a)(3)**

Defendants also contend that the relief sought by plaintiffs is unavailable under ERISA § 502(a)(3).  Defendants rely largely on the Second Circuit's 2006 *Frommert* decision, in which the court held that "[t]he relief that the plaintiffs seek, recalculation of their benefits consistent with the terms of the Plan, falls comfortably within the scope of § 502(a)(1)(B)," and that "[b]ecause adequate relief is available under this provision, there is no need on the facts of this case to also allow equitable relief under § 502(a)(3)."  433 F.3d at 270.  *See also LaRue*, 552 U.S. at 258 ("we have held that relief is not 'appropriate' under § 502(a)(3) if another provision, such as § 502(a)(1)(B), offers an adequate remedy") (citing *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)).

The court in *Frommert*, however, also "disagree[d] with the district court's conclusion that all of the relief sought by the plaintiffs in their claim for breach of fiduciary duties c[ould] be adequately addressed by the relief available under § 502(a)(1)(B)."  Stating that "responsibility for determining 'appropriate equitable relief' rests with the district court," and that this "determination 'must be based on ERISA policy and the special nature and purpose of employee benefits plans,'" the court "direct[ed] the district court that if the plaintiffs prevail on this claim, it must determine what 'appropriate equitable relief' is necessary."  *Id.* at 272 (quoting *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001)) (additional internal quote omitted).

In the case at bar, the sole remaining cause of action is for breach of fiduciary duty, based on defendants' refusal to apply, across the board, the Court of Appeals' ruling in *Frommert* that "the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD."  If plaintiffs prevail on this claim, their relief may indeed take the form of retroactively increased benefits.  But it is not, strictly speaking, a claim for benefits under § 1132(a)(1)(B).

Plaintiffs' claim is that by refusing to follow the Second Circuit's directive, defendants breached their fiduciary duty under § 1104 to act "solely in the interest of the participants and beneficiaries ... ."  Given the background of this litigation, that is not a garden-variety ERISA claim for benefits, but it is precisely for such atypical claims that § 502(a)(3) was intended to provide a remedy.  *See Bailey v. U.S. Enrichment Corp.*, ___ Fed.Appx. ___, 2013 WL 3766654, at *4 (6th Cir. 2013) (ERISA § 502(a)(3) "exists so that a court has other remedies at its disposal," beyond those provided by § 502(a)(1)(B)).

It also bears repeating that in *Frommert*, the Second Circuit expressly directed this Court to determine what "appropriate equitable relief" would be proper, under § 502(a)(3), should plaintiffs prevail on their claim for breach of fiduciary duty.  While the claim in the case at bar is not identical to that presented in *Frommert*, similar considerations apply, particularly the "special nature and purpose of employee benefits plans."  433 F.3d at 272.  This claim may therefore proceed.


**VI. Plaintiff McNeil's Motion for a Stay**

Plaintiff Joseph McNeil, Jr. has moved for an order staying this action pending resolution of his motion to intervene in *Frommert v. Conkright*.  McNeil's motion to intervene in *Frommert* was denied by the Court on November 17, 2011.  The motion to stay is therefore denied as moot.


**CONCLUSION**


Defendants' motion to dismiss the complaint (Dkt. #6) is granted in part and denied in part.  All of plaintiffs' claims, other than their claims for breach of fiduciary duty and for equitable relief based on defendants' failure and refusal to apply to them the directives of the

Court of Appeals for the Second Circuit in that court's 2006 decision in *Frommert v. Conkright*, as set forth more fully in the body of this Decision and Order, are dismissed.  In all other respects, the motion is denied.

Plaintiff Joseph McNeil's motion to stay this action pending resolution of his motion to intervene in *Frommert v. Conkright* (Dkt. #16) is denied as moot.

IT IS SO ORDERED.

_____

DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      October 16, 2013.