UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRUCE D. KUNSMAN, et al.,

                Plaintiffs,

                DECISION and ORDER

      -vs-              08-CV-6080

SALLY L. CONKRIGHT, et al.,

                Defendants.
_____

## INTRODUCTION

This is one of several cases that have come before this Court in recent years involving claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1101 *et seq.*, brought by current and former employees of Xerox Corporation, relating to the manner in which plaintiffs' pension benefits have been calculated. This and the related cases have been the subject of extensive litigation and reported decisions over the years, and the reader's familiarity with the relevant background is assumed.

There are currently three motions pending before the Court: plaintiff Joseph McNeil's motion for summary judgment and equitable relief (Dkt. #84); the other plaintiffs' motion for summary judgment and injunctive relief (Dkt. #85); and defendants' cross-motion for summary

judgment (Dkt. #89).

On June 25, 2018, after those motions had been filed, the Court issued a Decision and Order (Dkt. #95) staying the action pending the outcome of the appeal before the Court of Appeals for the Second Circuit in *Testa v. Becker*. The *Testa* action had been brought by a single plaintiff, Robert Testa ("Testa"). As this Court explained in that decision, many of the issues presented by the pending motions in this case related directly to issues on appeal in *Testa*. In general, those issues concern the defendants' calculation of the plaintiffs' pension benefits, and whether plaintiffs timely brought suit.

On December 12, 2018, the Second Circuit issued a decision in *Testa*, in which it affirmed this Court's denial of Testa's claim for benefits, reversed this Court's grant of summary judgment in favor of Testa on his claim for breach of fiduciary duty, and remanded the case with directions to enter judgment for the defendants. 910 F.3d 677. In that decision, the Second Circuit addressed and decided the issues that led this Court to issue a stay in the instant case. There thus appears to be no reason to continue the stay in this case, or not to decide the pending motions.

On April 19, 2019, this Court issued an Order (Dkt. #97), directing the parties to file responses concerning the effect on this case of the Second Circuit's *Testa* decision. Both sides have now done so.[1]

---

[1] Plaintiff McNeil is represented by separate counsel, but he and the other plaintiffs have filed a joint response to the Court's order.

## DISCUSSION

### I. *Testa v. Becker*

In *Testa*, the Court of Appeals decided two questions concerning ERISA: "whether a litigant may bring a denial-of-benefits claim under ERISA when the limitations period is six years and his claim accrued twelve years before he sued"; and whether the Second Circuit's decision in another related case, *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006) ("*Frommert I*"), ordered the pension plan administrator not to apply the so-called "phantom account offset"[2] to plan participants who did not bring timely denial-of-benefits claims. The court stated, unequivocally, "The answer to both questions is no." 910 F.3d at 679.

Leading up to the *Testa* appeal, this Court had ruled that the Second Circuit's decision in *Frommert I* directed the plan administrator not to apply the phantom account offset to *any* employees rehired prior to 1998. *Testa v. Becker*, 2013 WL 5876994 (W.D.N.Y. Oct. 30, 2013). That ruling was based on the Second Circuit's holding in *Frommert I* that it was not until the issuance of the 1998 summary plan description ("SPD") that the existence and terms of the phantom account (which had been applied for years) were adequately disclosed to plan participants. *See Frommert I*, 433 F.3d at 263. Based on my reading of the Second Circuit's holding in *Frommert I*, this Court held in *Testa* that Testa's denial-of-benefits claim was untimely, but that Testa had a viable claim for breach of fiduciary duty, based on the plan administrator's continued application of the phantom account. In 2017, the Court granted summary judgment to Testa on his claim for breach of fiduciary duty. 2017 WL 1857384

---

[2]The operation of the phantom account has been described in several decisions of this Court and the Court of Appeals, particularly *Frommert I*, 433 F.3d at 257-61.

(W.D.N.Y. May 9, 2017).

On appeal in *Testa*, the Court of Appeals affirmed this Court's dismissal of the denial-of-benefits claim. As to the fiduciary-duty claim, however, the court held that "*Frommert I* did not order [the plan administrator] to stop applying the phantom account offset to every single rehired employee who was hired before 1998," and that "[a]t the very least, *Frommert I* did not foreclose [the plan administrator] from raising legitimate affirmative defenses against rehired employees." 910 F.3d at 684, 685.

The Court of Appeals went on to note that in a later decision in *Frommert* ("*Frommert II*"), it concluded that the phantom account offset could be applied to plan participants who had waived their rights to bring ERISA claims, notwithstanding *Frommert I*. *Id.* at 685 (citing *Frommert v. Conkright*, 535 F.3d 111, 122 (2d Cir. 2008)). The court reasoned that "if [the administrator] could apply the phantom account offset to plan participants who waived their ERISA rights in *Frommert II*, he can also apply it to participants who cannot bring timely claims." *Id.* Because Testa's claim was untimely filed, the court held that the plan administrator "did not breach his fiduciary duty by applying the phantom account offset to Testa," and that the administrator was therefore entitled to judgment in his favor. *Id.* at 686.

## II. *Kunsman v. Conkright*

As stated in this Court's June 25, 2018 order in this case, and as the parties' filings have made clear, many of the issues presented in this action are closely related, if not identical, to the issues involved in *Testa*. In particular, the plaintiffs here, like the plaintiff in *Testa*, did not file suit until well past the expiration of the six-year limitations period for denial-of-benefits claims,

running from the issuance of the 1998 SPD. *See id.* at 684 (stating that "the 1998 SPD was a clear repudiation of benefits that started the six-year limitations period," and that "Testa's denial-of-benefits claim thus became untimely in 2004"). Plaintiffs in the case at bar commenced this action in February 2008, nearly two years before Testa filed his complaint, but still well after time had run out to file a claim for wrongful denial of benefits.

In their response to this Court's April 2019 Order, plaintiffs contend that the Second Circuit's *Testa* decision is not controlling, for a number of reasons. I find, however, that none of those arguments are persuasive.

First, plaintiffs assert that this case is "materially different" from *Testa*, because plaintiffs here (unlike Testa) sought leave to join or intervene in the *Frommert* lawsuit. Plaintiffs also contend that they were led to believe by both this Court and the Court of Appeals that it was unnecessary for them to do so, because their interests would be adequately protected by the existing *Frommert* plaintiffs. *See* Plaintiffs' Brief (Dkt. #101) at 1-4.

Plaintiffs' argument is misguided. As this Court stated in a prior decision in this case, "the Second Circuit's [*Frommert I*] holding precluding the application of the phantom account to employees rehired prior to 1998, while it may show that such an act was unlawful, does not relieve beneficiaries of their obligation to timely file suit to protect their rights." 977 F.Supp.2d 250, 259 (2013). This Court also recognized in that decision that there could be "individualized defenses" to plaintiffs' claims. *Id.*

The Court did go on to find that plaintiffs had stated a facially valid, timely claim for breach of fiduciary duty based on their allegation that defendants had refused to follow the Second Circuit's directives in its 2006 *Frommert I* decision, *see id.* at 263, but that is essentially

the same result that the Court reached in *Testa*. As stated, the Court of Appeals disagreed with that conclusion.

Contrary to plaintiffs' arguments, the statements by this Court and the Court of Appeals in *Frommert* concerning the *Kunsman* plaintiffs' attempts to join the *Frommert* lawsuit do not materially distinguish this case from *Testa*. On March 2, 2005, the Court of Appeals issued a one-paragraph order denying a motion by five individuals–Richard Carville, Nicholas DeSario, Stephen Dunn, Donna Beckles, and Katherine McCarthy, all of whom are now plaintiffs in *Kunsman*–for leave to intervene in the then-pending *Frommert* appeal. *Frommert*, No. 00-cv-6311, Dkt. #112. The court said that the "[p]utative intervenors have failed to file a timely application and have failed to show that their interests are not adequately protected by the existing plaintiffs-appellants." *Id.*[3]

In January 2007, this Court issued a Decision and Order in *Frommert*, 472 F.Supp.2d 452, granting in part both sides' motions for various relief. In that decision, I noted that the plaintiffs had filed a motion for leave to file a second amended complaint, adding a number of additional plaintiffs in this case, including individuals who are now plaintiffs in the *Kunsman* lawsuit. In support of that motion, the plaintiffs stated that following the Second Circuit's remand in *Frommert I*, several Xerox employees who had been separated from and then rehired by Xerox prior to 1998 had contacted the *Frommert* plaintiffs' counsel, seeking to join in or obtain the benefits of the court rulings in *Frommert*.

With respect to the motion to amend, this Court stated that "the Second Circuit's holding

---

[3]The *Frommert* appeal in question had been taken from a July 30, 2004 decision of this Court granting summary judgment for the defendants. On appeal, the Second Circuit vacated that decision in part and remanded for further proceedings, in *Frommert I*. 433 F.3d 254.

-6-

[in *Frommert*] that 'the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD,' 433 F.3d at 263, would certainly seem to foreclose defendants from utilizing the phantom account in calculating 'new' retirees' pension benefits," but, the Court added, since the motion had "not been briefed by defendants, and since there may be issues involving individualized defenses or other matters bearing upon the motion to amend, I will not decide the motion at this time, but will instead reserve decision after the matter has been fully briefed ... ." *Id.* 472 F.Supp.2d at 467. Subsequent to the issuance of that decision, plaintiffs' counsel advised the Court that the plaintiffs were withdrawing their motion to amend, and the Court denied the motion as moot. *Frommert* Dkt. #139.

Those decisions do not materially distinguish this case from *Testa*. As to the Second Circuit's March 2005 order, that court's decision was based in part on the movants' having "failed to file a timely application ... ." The court's statement that the movants had also "failed to show that their interests [we]re not adequately protected by the existing plaintiffs-appellants" did not imply that the would-be intervenors had a valid, timely claim to begin with. The court's statement was implicitly limited to whatever interests, if any, the movants had at that point.

With respect to this Court's 2007 decision in *Frommert*, the Court explicitly deferred deciding the plaintiffs' motion to amend. The Court's statement concerning whether defendants could continue to apply the phantom account to employees rehired before 1998 was dictum, inasmuch as the Court did not actually decide the motion, and, in any event, it was effectively overruled by the Court of Appeals' subsequent decision in *Testa*.

Plaintiffs' contention that their prior attorney relied on this Court's statements in its 2007 decision in withdrawing the motion to amend, *see* Plaintiff's Brief at 3, is therefore meritless.

The Court's decision explicitly stated that the Court was *not* deciding the motion to amend. Plaintiffs' attorney could certainly have followed through, fully briefed the matter in accordance with the Court's scheduling order, and awaited a definitive ruling by the Court. For whatever reason, he chose not to do so.

Plaintiffs' assertion that the motion to amend "would have been granted," and that their claims would have related back to the original *Frommert* complaint, is flawed in several respects. As stated, plaintiffs, through their then-attorney, *chose* to withdraw their motion. That is why the motion was never decided. To say that it would have been granted, had the motion not been withdrawn, is both irrelevant and entirely speculative. And it is now clear from the Second Circuit's *Testa* decision that there never was a valid basis to allow the *Kunsman* plaintiffs to join the *Frommert* litigation at that late date.

The underlying problem with plaintiffs' present claims, then, is not that plaintiffs' attempts to intervene in or be added to the *Frommert* litigation were denied, but that plaintiffs simply waited too long to assert their ERISA rights. Neither this Court nor the Court of Appeals lulled plaintiffs into sleeping on their rights. By the time the *Kunsman* plaintiffs sought to assert a claim, whether in *Frommert* or in a separate action, it was too late. To the extent that this Court may have indicated that court rulings in the *Frommert* litigation would apply to the *Kunsman* plaintiffs, that has been rejected by the Second Circuit in *Testa*.

As this Court stated in another related case, "[i]f plaintiffs objected to [the phantom account] offset, their time to challenge it began to run [in 1998, when the terms of the offset were fully disclosed to plan participants]. Plaintiffs were not free to sit on the sidelines while other plan participants brought a legal challenge in *Frommert*, and, after those other employees won a

victory in court, belatedly jump into the fray." *Holland v. Becker*, No. 08-CV-6171, 2013 WL 5786590, at *4 (W.D.N.Y. Oct. 28, 2013).

Plaintiffs also note that in August 2007, their then-attorney sent a letter to the plan administrator requesting that their benefits be calculated in accordance with the formula directed by this Court's 2007 *Frommert* decision. The administrator responded that plaintiff's benefits had been correctly calculated, and that plan participants' benefits would be correctly calculated, without exception and until a final judicial resolution contrary to defendants' interpretation of the plan. *See* Plaintiffs' Brief (Dkt. #101) at 3-4.

Apparently in support of their assertion that equitable tolling should apply here, plaintiffs assert that the administrator thereby indicated an intention to calculate their benefits in the same manner as the *Frommert* plaintiffs' benefits. In fact, he did quite the opposite. The administrator said the plaintiffs' benefits had already been calculated correctly, and, in effect, that there would be no change in how they were calculated unless and until a "final" court decision mandated a change. The administrator's response thus provides no basis for equitable tolling, or for relief on any other grounds. *See Wright v. Rensselaer County Jail*, 771 Fed.Appx. 58, 60 (2d Cir. 2019) ("To qualify for equitable tolling, a plaintiff must show that some extraordinary circumstance, such as fraudulent concealment, stood in the way of bringing suit and that he had been pursuing his rights diligently") (citing *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014)).[4]

---

[4]If the history of this litigation makes anything clear, it is that defendants rarely if ever changed their behavior concerning plaintiffs' benefits until after every possible avenue of relief, sought by either side, had been fully exhausted. By 2007, that must have been abundantly clear to plaintiffs' counsel. *See Frommert*, 153 F.Supp.3d at 609-10 (stating that "while Xerox has yielded some legal ground over the years ... it has done so grudgingly, block by metaphorical

Plaintiffs' other arguments in support of their equitable-tolling claim are essentially variations on the same theme, and are equally flawed. The Court of Appeals in *Testa* emphatically rejected Testa's assertion that "[d]efendants were under a duty to apply any remedy granted in the pending *Frommert* action to all Plan participants." 910 F.3d at 683. Describing that as a "radical argument," the court said that "no court to our knowledge has ever held that equitable tolling applies *in every single* ERISA denial-of-benefits action," and that "We will not be the first." *Id.* at 684.

The court in *Testa* went on to say that "even if equitable tolling did apply, Testa would almost certainly not qualify for it," because he had not been diligent in pursuit of his claims. As the court put it, "Testa was not 'diligent' in any sense of the word: he sat on his rights from 1998 to 2010." *Id.*

That the *Kunsman* plaintiffs may not have sat on their rights for quite so long as did Testa does not materially distinguish this case from *Testa*. That the plaintiffs in this case attempted, too late, to intervene in *Frommert* is immaterial.

Nor is the Court persuaded by plaintiffs' assertions that there are factual issues concerning when plaintiffs first had actual knowledge of the alleged breach of defendants' fiduciary duties, or whether defendants attempted to conceal the alleged breach. That includes plaintiffs' mention of McNeil's receipt of a "You & Xerox" statement, which was intended to inform plan participants how their benefits would be calculated. *See* Plaintiffs' Brief at 7-8. Plaintiffs have not shown how that statement was deceptive, particularly given the 1998 SPD's full explanation of how the phantom account worked. *See Anderson v. Xerox Corp.*, 29

---

block").

F.Supp.3d 323, 331 (W.D.N.Y. 2014) (finding that "You and Xerox" booklet adequately gave plaintiff notice that his benefits would be reduced based on prior distribution, and that his release of ERISA claims was therefore enforceable), *aff'd*, 614 Fed.Appx. 38 (2d Cir. 2015).

If anything can fairly be said to have now been made clear in these cases, it is that the 1998 SPD fully and adequately disclosed the details of the phantom account offset, and that the limitations clock began ticking upon plaintiffs' receipt of that SPD. Testa made essentially the same arguments as plaintiffs do now, which the Second Circuit flatly rejected. Plaintiffs' contention that there remain unresolved issues in this case is meritless.

## CONCLUSION

The stay entered by the Court on June 25, 2018 (Dkt. #95) is hereby lifted.

Plaintiff Joseph McNeil's motion for summary judgment and equitable relief (Dkt. #84), and the other plaintiffs' motion for summary judgment and injunctive relief (Dkt. #85), are denied.

Defendants' cross-motion for summary judgment (Dkt. #89) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
HON. DAVID G. LARIMER
United States District Court

Dated: August 26, 2019
Rochester, New York